NO.
12-05-00279-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

TONY JOSEPH BREAUX,  §                      APPEAL FROM THE 124TH

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §                      GREGG
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Tony Joseph
Breaux appeals his conviction for possessing with intent to deliver four
hundred or more grams of cocaine, for which he was sentenced to imprisonment
for twenty years.  In three issues,
Appellant challenges the legal and factual sufficiency of the evidence and contends
that his trial counsel provided ineffective assistance.  We affirm.

 

Background

            Appellant
was charged by indictment with one count of possession of four hundred or more
grams of cocaine with intent to deliver, and one count of possession of four
hundred or more grams of cocaine. 
Appellant pleaded “not guilty,” and the matter proceeded to trial by
jury.

            The
State called Texas Department of Public Safety Trooper David John Reynolds as
its first witness.  Reynolds testified
that on February 27, 2002 at approximately 6:30 p.m., he stopped a vehicle for
excessive speed on Interstate 20 in Gregg County, Texas.[1]








 
The driver of the vehicle was Tyrone Aaron.  Appellant was the only passenger.  

            Reynolds
conversed with Aaron and learned that the vehicle had been rented by Aaron’s
girlfriend.  The one day rental agreement
listed Aaron as an additional driver. 
Reynolds requested that Aaron step to the rear of the vehicle, where
Reynolds and Aaron conversed further. 
Reynolds stated that Aaron told him that he and Appellant were traveling
from Dallas, Texas to Thibodaux, Louisiana to visit Appellant’s grandmother,
who had been in an accident.  Aaron
further told Reynolds that the two would be in Thibodaux for one day.  Thereafter, Reynolds spoke to Appellant, who
was still sitting in the front passenger seat of the car.  According to Reynolds, Appellant told him
that his grandmother had cancer and that he and Aaron would be in Thibodaux for
three days.  Reynolds stated that
Appellant seemed uncomfortable and would not make eye contact with him.  Reynolds described Appellant’s level of
nervousness as very heightened over what would normally be exhibited by a
person during a traffic stop.

            Reynolds
testified that he returned to the rear of the vehicle and again asked Aaron why
the two men were traveling to Thibodaux, Louisiana.  Reynolds stated that Aaron responded that he
did not know why because Appellant had not told him.  Reynolds testified that he then asked Aaron
for consent to search the vehicle, which Aaron granted him.  Reynolds further testified that he next approached
Appellant, who was still sitting in the car, and asked Appellant for his
consent to search the vehicle.  Reynolds
stated that Appellant also gave him consent to search the vehicle.

            Reynolds
asked Appellant to exit the vehicle and began to search the passenger
compartment.  Reynolds testified that he
located a small black bag in between the passenger seat and the console from
which emanated an odor of some type of perfume or air freshener.  Reynolds stated that he was suspicious of the
black bag because it is common for people transporting narcotics to use
cologne, perfume, or air freshener to disguise the odor of the narcotics.  Reynolds further stated that he asked
Appellant what the bag was.  Appellant
responded that they had gone to the store earlier and that the bag had come
from the store.[2]  Reynolds
testified that he also searched the driver’s side of the passenger compartment
of the vehicle.  Reynolds further
testified that he looked underneath the center console toward the rear of the
vehicle and could see duct tape wrapped bundles under the console.  Reynolds stated that after locating the
bundles, which he suspected contained narcotics, he and another trooper present
on the scene arrested Aaron and Appellant to ensure that the scene remained
safe.  Reynolds testified that he then
resumed his search and removed the four bundles from underneath the console.[3]  Reynolds further testified that from the four
bundles emanated the same fragrance that he smelled on the bag located in
between the passenger seat and the console. 
Reynolds stated that he believed that the bag was originally used to transport
the bundles.  Reynolds further stated
that he inspected the four bundles and that each contained cocaine.

            Karen
Ream, a forensic chemist with the Texas Department of Public Safety crime lab,
testified as the State’s next witness. 
Ream identified the four bundles recovered from the car in which
Appellant was a passenger.  Ream
testified that each of the bundles contained cocaine.  Ream further testified that the aggregate
weight of the cocaine contained in the four bundles was 493.26 grams.

            Brian
Ray, a narcotics investigator for the Longview Police Department, testified as
an expert for the State.  Ray testified
that the quantity of cocaine recovered was large.  Ray also testified that the cocaine recovered
was undiluted or uncut based on its appearance.[4]  According to Ray, the cocaine recovered had
an uncut value of approximately forty thousand dollars, but that the street
value would increase exponentially assuming that the cocaine would be cut
multiple times before it was sold.  Ray
further stated that it is common for persons trafficking drugs to use a
substance such as grease, peanut butter, or a fabric softener sheet to attempt
to cover the odor and interfere with a drug dog’s ability to detect the
narcotics.  Ray testified that rental
cars are often used in trafficking drugs so that if the traffickers are
convicted, the vehicle will not be subject to seizure and forfeiture.  Ray elaborated that rental cars may also be
utilized because they are more reliable and less likely to break down.  Ray further stated that persons transporting
drugs through Gregg County are usually traveling from south to north or west to
east.  Ray testified that due to the
quantity of cocaine seized, it was his opinion that it was “definitely an
amount to be distributed.”

            At
the conclusion of Ray’s testimony, the State and Appellant rested.  The jury found Appellant guilty as charged as
to the count for possession with intent to deliver.  Following a trial on punishment, the jury
assessed Appellant’s punishment at imprisonment for twenty years.  The trial court sentenced Appellant
accordingly, and this appeal followed.

 

Evidentiary
Sufficiency

            In
his first issue, Appellant argues that the evidence was factually insufficient
to support the jury’s verdict.  In his
second issue, Appellant contends that the evidence was legally insufficient to
support the jury’s verdict.

Legal Sufficiency

            Legal
sufficiency is the constitutional minimum required by the Due Process Clause of
the Fourteenth Amendment to sustain a criminal conviction.  See Jackson v. Virginia, 443
U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); see also
Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet.
ref’d).  The standard for reviewing a
legal sufficiency challenge is whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt.  See Jackson, 443 U.S. at 320,
99 S. Ct. at 2789; see also Johnson v. State, 871 S.W.2d 183, 186
(Tex. Crim. App. 1993).  The evidence is
examined in the light most favorable to the jury’s verdict.  See Jackson, 443 U.S. at 320,
99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186.  A successful legal sufficiency challenge will
result in rendition of an acquittal by the reviewing court.  See Tibbs v. Florida, 457 U.S.
31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

            The
sufficiency of the evidence is measured against the offense as defined by a
hypothetically correct jury charge.  See
Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge would include one that “accurately
sets out the law, is authorized by the indictment, does not unnecessarily
increase the State’s burden of proof or unnecessarily restrict the State’s
theories of liability, and adequately describes the particular offense for
which the defendant is tried.”  Id.  

            A
person commits an offense if the person knowingly or intentionally possesses a
controlled substance in Penalty Group 1 with intent to deliver.  See Tex.
Health & Safety Code Ann. § 481.112(a) (Vernon 2003).  To support a conviction for possession of a
controlled substance, the evidence must support (1) that the accused exercised
actual care, control, or custody of the substance, (2) that he was conscious of
his connection with it, and (3) that he possessed the substance knowingly or
intentionally.   See Tex. Health & Safety Code Ann. §§
481.103(3)(D),  481.115(f) (Vernon
2003 & Supp. 2006); Brown v. State, 911 S.W.2d 744, 747 (Tex.
Crim. App. 1995).  The evidence used to
satisfy these elements can be either direct or circumstantial.  Id. 
Intent to deliver may be inferred from the quantity of drugs
possessed and from the manner in which they are packaged.  Parker v. State, 192 S.W.3d 801,
805 (Tex. App.–Houston [1st Dist.] 2006, pet. ref’d). 

            Be
it by direct or circumstantial evidence, the State must establish that the
accused’s connection with the substance was more than just fortuitous.  Id.  However, when the contraband is not found on
the accused’s person or is not in the accused’s exclusive possession,
additional facts must affirmatively link the accused to the contraband.  See Jones v. State, 963 S.W.2d
826, 830 (Tex. App.–Texarkana 1998, pet. ref’d).  The affirmative link ordinarily emerges from
an orchestration of several factors and the logical force they have in
combination.  Id.

            Among
the nonexclusive factors that may be considered when evaluating affirmative
links are  (1) whether the contraband was
in plain view or recovered from an enclosed place; (2) whether the accused was
the owner of the premises or had the right to possess the place where the
contraband was found, or was the owner or driver of the automobile in which the
contraband was found; (3) whether the accused was found with a large amount of
cash; (4) whether the contraband was conveniently accessible to the accused, or
found on the same side of the vehicle as the accused was sitting; (5) whether
the contraband was found in close proximity to the accused; (6) whether a
strong residual odor of the contraband was present; (7) whether the accused
possessed other contraband when arrested; (8) whether paraphernalia to use the
contraband was in view, or found on the accused; (9) whether the physical
condition of the accused indicated recent consumption of the contraband in
question; (10) whether conduct by the accused indicated a consciousness of
guilt; (11) whether the accused attempted to escape or flee; (12) whether the
accused made furtive gestures; (13) whether the accused had a special
connection to the contraband; (14) whether the occupants of the premises gave
conflicting statements about relevant matters; (15) whether the accused made
incriminating statements connecting himself to the contraband; (16) the
quantity of the contraband; and (17) whether the accused was observed in a
suspicious place under suspicious circumstances.  See Lassaint v. State, 79
S.W.3d 736, 740-41 (Tex. App.–Corpus Christi 2002, no pet.).  

            In
the case at hand, Reynolds testified that an eastbound interstate highway, such
as Interstate 20, is a heavily traveled narcotics trafficking route. Reynolds
further testified that Dallas, Texas is a common narcotics distribution center.
Reynolds and Ray both testified that it is common for drug traffickers to use
rental cars to avoid having their own vehicles subject to seizure if they are
apprehended. The record reflects that Appellant and Aaron were stopped on
Interstate 20 in a rental car and that Aaron’s name appeared on the rental
application as an authorized driver. See, e.g., Mohmed v. State,
977 S.W.2d 624, 627 (Tex. App.–Fort Worth 1998, pet. ref’d).  The record reflects that Aaron’s girlfriend
had rented the car and that the rental agreement was for one day.  Willis and Appellant gave conflicting stories
about the underlying reason for their trip from Dallas, Texas to Thibodaux,
Louisiana, with Aaron telling Reynolds that Appellant’s grandmother had been in
an accident while Appellant told Reynolds his grandmother had cancer.  There was also a discrepancy between the two
men’s statements as to the amount of time they planned to spend in
Louisiana.  An overwhelming scent of
cologne or air freshener emanated from the bag located in between the passenger
seat in which Appellant was located and the center console.  A similar scent emanated from the bundles of
cocaine Reynolds located underneath the console.  One of the bundles of cocaine also had grease
smeared on it.  Both Reynolds and Ray
testified that the use of air fresheners or grease is a common practice
employed by drug traffickers to cut down the smell of the drugs.  Reynolds further testified that Appellant
avoided making eye contact with him to an unusual degree and seemed
uncomfortable.  Reynolds described
Appellant’s level of nervousness as very heightened over what would normally be
exhibited by a person during a traffic stop. 
Reynolds testified that the cocaine found beneath the console was
accessible to Appellant and Aaron.  Ray
further stated that the cocaine recovered from the vehicle was a large amount
of cocaine and uncut.  Furthermore, Ray
testified that  due to the quantity of
cocaine seized, it was his opinion that it was “definitely an amount to be
distributed.”

            Examining
the aforementioned evidence in the light most favorable to the jury’s verdict
and in light of the nonexclusive factors set forth above, we conclude that the
jury could have reasonably determined beyond a reasonable doubt that Appellant
possessed the cocaine located beneath the console knowingly and intentionally,
that he exercised actual care, custody, or control of the cocaine, and that he
was conscious of his connection with it. 
We further conclude that the record supports that Appellant possessed
the requisite intent to deliver the cocaine in question.  Therefore, we hold that the evidence was
legally sufficient to support the jury’s verdict.  Appellant’s second issue is overruled.

Factual Sufficiency

            Turning
to Appellant’s contention that the evidence is not factually sufficient to
support the jury’s verdict, we must first assume that the evidence is legally
sufficient under the Jackson standard.  See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996).  We then
consider all of the evidence weighed by the jury that tends to prove the
existence of the elemental fact in dispute and compare it to the evidence that
tends to disprove that fact.  See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  Although we are authorized to disagree with
the jury’s determination, even if probative evidence exists that supports the
verdict, see Clewis, 922 S.W.2d at 133, our evaluation should not
substantially intrude upon the jury’s role as the sole judge of the

weight and credibility of witness
testimony.  Santellan, 939
S.W.2d at 164.  Where there is
conflicting evidence, the jury’s verdict on such matters is generally regarded
as conclusive.  See Van Zandt v.
State, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref’d).  Ultimately, we must ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that
the proof of guilt is so obviously weak as to undermine our confidence in the
jury's determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).[5]  

            A
verdict will be set aside “only if the evidence supporting guilt is so
obviously weak, or the contrary evidence so overwhelmingly outweighs the
supporting evidence, as to render the conviction clearly wrong and manifestly
unjust.”  Ortiz v. State,
93 S.W.3d 79, 87 (Tex. Crim. App. 2002); see   Sims v. State, 99 S.W.3d 600,
601 (Tex. Crim. App. 2003).  A clearly
wrong and manifestly unjust verdict occurs where the jury's finding “shocks the
conscience,” or “clearly demonstrates bias.” 
 Zuniga, 144 S.W.3d
at 481.

            As
the court of criminal appeals explained in Zuniga, “There is only
one question to be answered in a factual-sufficiency review:  Considering all of the evidence in a neutral
light, was a jury rationally justified in its finding of guilt beyond a
reasonable doubt?”  See id.
at 484.  

            In
the case at hand, in addition to the evidence already discussed, the record
reflects that some factors tend to support that Appellant could not be
affirmatively linked to the cocaine in question.  For instance, 
(1) the cocaine was not in plain view, (2) the record does not indicate
that Appellant had signed or initialed the rental agreement, (3) Appellant did
not have a large amount of cash on his person when he was arrested, (4)
Reynolds stated that he could not smell the cocaine when he initially
approached the car, (5) Appellant did not possess any contraband or drug
paraphernalia at the time of his arrest, (6) Appellant was not impaired due to
the consumption of narcotics, (7) Appellant did not attempt to escape, and (8)
Appellant made no furtive gestures or incriminating statements.

            We
have reviewed the record in its entirety. 
We iterate that our evaluation should not substantially intrude upon the
jury’s role as the sole judge of the weight and credibility of witness
testimony, see Santellan, 939 S.W.2d at 164, and where
there is conflicting evidence, the jury’s verdict on such matters is generally
regarded as conclusive.  See Van
Zandt, 932 S.W.2d at 96.  We
further note that there is no set formula for finding an affirmative link, but
rather affirmative links are established by a consideration of a totality of
the circumstances.  See Hyett v.
State, 58 S.W.3d 826, 830 (Tex. App.–Houston [14th Dist.] 2001, pet.
ref’d).  

            Given
the circumstances in the instant case, we conclude that the jury was entitled
to find that the evidence tending to link Appellant to the cocaine in question
was of greater consequence than the evidence not tending to so link Appellant.  Our review of the record as a whole, with
consideration given to all of the evidence, both for and against the jury’s
finding, has not revealed to us any evidence that causes us to conclude that
the proof of guilt is so obviously weak or is otherwise so greatly outweighed
by contrary proof as to render Appellant’s conviction clearly wrong or
manifestly unjust.  Therefore, we hold
that the evidence is factually sufficient to support the jury’s verdict.  Appellant’s first issue is overruled.

 

Ineffective
Assistance of Counsel

            In
his third issue, Appellant argues that he received ineffective assistance of
counsel.  Specifically, Appellant
contends that his counsel was ineffective because he failed to pursue pretrial
motions he filed by failing to appear at a pretrial hearing on such
motions.  As such, Appellant argues, his
trial counsel failed to preserve error on his motion to suppress illegally
seized evidence.  Appellant further
contends that his counsel was ineffective in failing to object to Ray, who not
only was not listed as an expert witness, but whose testimony, according to
Appellant, was irrelevant, speculative, and highly prejudicial.

            Claims
of ineffective assistance of counsel are evaluated under the two step analysis
articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct.
2052, 80 L. Ed. 674 (1984).  The first
step requires the appellant to demonstrate that trial counsel's representation
fell below an objective standard of reasonableness under prevailing professional
norms.  See Strickland,
466 U.S. at 688, 104 S. Ct. at 2065.  To
satisfy this step, the appellant must identify the acts or omissions of counsel
alleged to be ineffective assistance and affirmatively prove that they fell
below the professional norm of reasonableness. 
See McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim.
App. 1996). The reviewing court will not find ineffectiveness by isolating any
portion of trial counsel’s representation, but will judge the claim based on
the totality of the representation.  See
Strickland, 466 U.S. at 695, 104 S. Ct. at 2069.

            To
satisfy the Strickland standard, the appellant is also required
to show prejudice from the deficient performance of his attorney.  See Hernandez v. State,
988 S.W.2d 770, 772 (Tex. Crim. App. 1999). 
To establish prejudice, an appellant must prove that but for counsel's
deficient performance, there is a reasonable probability that the result of the
proceeding would have been different.  See
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

            A
“reasonable probability” was defined by the Supreme Court as a “probability
sufficient to undermine confidence in the outcome.”  Id.  Counsel is strongly presumed to have rendered
adequate assistance and to have made all significant decisions in the exercise
of reasonable professional judgment.  See
Hernandez, 726 S.W.2d at 55. 
The burden is on the appellant to overcome that presumption.  See Burruss v. State, 20 S.W.3d
179, 186 (Tex. App.–Texarkana 2000, pet. ref’d).  The appellant must show specific acts or
omissions that constitute ineffective assistance and affirmatively prove that
those acts fall below the professional norm for reasonableness. Id.  

            After
proving error, the appellant must affirmatively prove prejudice.  Id.  The appellant must prove that his attorney's
errors, judged by the totality of the representation and not by isolated
instances of error, denied him a fair trial. 
Id.  It is not
enough for the appellant to show that the errors had some conceivable effect on
the outcome of the proceedings.  Id.  He must show that there is a
reasonable probability that, but for his attorney’s errors, the outcome would
have been different.  See id. 

Failure to Pursue Motion to Suppress
Illegally Seized Evidence

            With
regard to his trial counsel’s failure to pursue his motion to suppress,
Appellant argues at length as to why his trial counsel’s actions fell below the
professional norm.  However, even
assuming arguendo that the actions of Appellant’s trial counsel, as urged by
Appellant in his brief, satisfied the first prong of the Strickland
test, Appellant must still affirmatively prove prejudice.  See  Burruss, 20 S.W.3d at 186.  It is not enough for the appellant to merely
show that the errors had some conceivable effect on the outcome of the
proceedings.  Id.  

            Here,
Appellant argues that had the motion to suppress been properly pursued, counsel
would have been able to show that established case law supports his
argument.  Appellant elaborates on his
contentions citing Kothe v. State, 152 S.W.3d 54 (Tex. Crim. App.
2004) in support of his proposition that an officer violates a person’s Fourth
Amendment rights when he unnecessarily detains the person while he engages in a
fishing expedition in an effort to justify reasonable suspicion or probable
cause.  Yet Appellant’s motion to suppress
does not reference among the stated grounds that the detention in question
exceeded the purpose or scope of the initial traffic stop.[6]  Furthermore, that Reynolds received consent
from both Aaron and Appellant to search the vehicle does not increase the
likelihood that Appellant’s motion to suppress, even had it been pursued, would
have been successful.

            We
iterate that the burden of proof as to this issue rests squarely upon
Appellant.  See Burruss, 20
S.W.3d at 186.  Having considered the
allegations in Appellant’s motion to suppress and the pertinent evidence of
record, we cannot conclude that had Appellant’s counsel pursued the motion, he
would have succeeded in having the evidence suppressed.  Thus, we hold that Appellant has not
satisfied his burden under the second prong of the Strickland test.

Ray’s Testimony 

            We
next consider Appellant’s argument that his trial counsel was ineffective for
his failure to object to the expert testimony offered by Ray.  In any case considering the issue of
ineffective assistance of counsel, we begin with the strong presumption that
counsel was effective.  See Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  We must presume counsel’s actions and
decisions were reasonably professional and were motivated by sound trial
strategy.  See id.  Appellant has the burden of rebutting this
presumption by presenting evidence illustrating why his trial counsel did what
he did.  See id.  Appellant cannot meet this burden if the
record does not affirmatively support the claim.  See Jackson v. State, 973 S.W.2d
954, 955 (Tex. Crim. App. 1998) (inadequate record on direct appeal to evaluate
whether trial counsel provided ineffective assistance); Phetvongkham v.
State, 841 S.W.2d 928, 932 (Tex. App.–Corpus Christi 1992, pet. ref'd,
untimely filed) (inadequate record to evaluate ineffective assistance claim);
see also Beck v. State, 976 S.W.2d 265, 266 (Tex. App.–Amarillo
1998, pet. ref'd) (inadequate record for ineffective assistance claim, citing
numerous other cases with inadequate records to support ineffective assistance
claim).  A record that specifically
focuses on the conduct of trial counsel is necessary for a proper evaluation of
an ineffectiveness claim.  See Kemp
v. State, 892 S.W.2d 112, 115 (Tex. App.–Houston [1st Dist.] 1994, pet.
ref'd).

    
In the case at hand, Appellant chronicles, in great detail, his attorney’s
allegedly poor performance at trial. Yet, the record is silent as to the
reasons underlying Appellant’s counsel’s alleged ineffective acts and omissions
during trial. Although Appellant argues that his trial counsel failed to object
to Ray’s testimony and that such objections would have been sustained,
Appellant’s argument is not a substitute for record evidence indicating why
Appellant’s trial counsel chose the course he did. See Jackson,
877 S.W.2d at 771. As a result, Appellant cannot overcome the strong
presumption that his counsel performed effectively. Therefore, we hold that
Appellant has not met the first prong of Strickland because the
record does not contain evidence concerning Appellant’s trial counsel’s reasons
for choosing the course he did.  Thus, we
cannot conclude that Appellant's trial counsel was ineffective in failing to
object to Ray’s testimony.  Appellant’s
third issue is overruled.

 

Disposition

            Having
overruled Appellant’s first, second, and third issues, we affirm
the trial court’s judgment.

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

 

Opinion
delivered October 25, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1]
Reynolds later testified that based on his training and experience, it is
common that drug trafficking occurs on eastbound interstate highways toward
Louisiana.  He further stated that such
narcotics often come through  Dallas,
Texas, which is a large narcotics distribution center.





[2] Reynolds testified that he did not locate any
items in the car that would be commonly associated with a grocery store or gas
station such as soda cans or food wrappers.





[3]
Reynolds testified that the four bundles underneath the console were accessible
from either the driver or passenger side of the vehicle.  Reynolds further testified that one bag was
smeared with grease, a common tactic used to interfere with the scent detection
of a narcotics dog.





[4]
Ray further testified that uncut cocaine hydrochloride typically contains
approximately ninety percent pure cocaine. 
Ray stated that cocaine is typically cut repeatedly to a mixture
containing approximately twenty-eight percent cocaine by the time it reaches an
end user.





[5] However, “contrary evidence does not have to
outweigh evidence of guilt; it has to be only enough to provide reasonable
doubt.”  Zuniga v. State,
144 S.W.3d 477, 483 (Tex. Crim. App. 2004). 





[6] This court has recently addressed the issue
concerning whether a traffic stop exceeded the scope of the initial detention
in Willis v. State, 192 S.W.2d 585 (Tex. App.–Tyler 2006, pet.
ref’d).  As we noted in Willis,
during a routine traffic stop, an officer may request a driver's license,
liability insurance information, vehicle ownership information, information
concerning the driver's destination, and information concerning the purpose of
the trip. Id. at 590-91.