NO.
12-05-00281-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

JASON LYLE MILLER,      §                      APPEAL FROM THE THIRD

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §                      ANDERSON
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Jason Lyle
Miller appeals his conviction for aggravated sexual assault of a child, for
which he was sentenced to imprisonment for fifteen years.  Appellant raises four issues on appeal.  We affirm.

 

Background

            Following
a domestic dispute with his wife, Appellant decided to spend a few nights at
his mother’s nearby residence.  Between
2:30 a.m. and 3:00 a.m. on April 27, 2002, Appellant arrived at his mother’s
house[1]
to find it occupied by other relatives. 
As he entered the house, Appellant saw F.G.’s mother and her boyfriend
asleep in a car parked in the driveway. 
Appellant’s sister and her boyfriend occupied the sleeper sofa.  Appellant’s sister’s infant child was
sleeping in Appellant’s mother’s bedroom. 
Eleven year old F.G. and her infant sister were asleep in the second
bedroom.








            According
to F.G.’s testimony, Appellant entered the bedroom in which F.G. and her sister
were sleeping at approximately 3:00 a.m. 
F.G. testified that she awoke as Appellant entered the room and got into
the bed next to her.[2] 
F.G. stated that Appellant moved her leg onto his own leg, then got on
top of her and placed his hand inside her shirt.  F.G. further stated that Appellant, still
clothed, began “humping”[3] her and kissed her on the lips.  F.G. testified that she was scared and did
not say anything.  F.G. further testified
that Appellant then got up and went to the bathroom and that when he returned,
she feigned sleep.  F.G. stated that
Appellant again got on top of her and kissed her vagina over her shorts.  F.G. further stated that Appellant next moved
his finger through the legs of her shorts and put it in her vagina, which hurt
her.  Next, according to F.G., Appellant
tried to get her to put her hand down his pants, which were unbuttoned, and
touch his private part.  However, F.G.
stated that she acted as if there was something the matter with her infant
sister as an excuse to move away from Appellant.  F.G. testified that Appellant again went to
the bathroom and, upon his return, retrieved a pillow and went to sleep on the
floor.  F.G. further testified that
Appellant told her, “Keep this a secret. 
It’s only between me and you.” 
F.G. later told her older sister what had happened.  Her sister convinced her to tell her mother
of the occurrence.

            Appellant
testified in his defense.[4] 
Appellant stated that when he arrived at his mother’s house, he noticed
that each of the beds was taken. 
Appellant further stated that his sister’s child had trouble going to
sleep, so he did not feel comfortable moving her out of his mother’s bed.  Appellant testified that he could not sleep
on the floor in his mother’s room because she had a dog that had urinated on
the carpet in that room.  Appellant
further testified that he did not sleep in the recliner in the living room
because it was broken.  Appellant stated
that he entered the room in which F.G. and her sister were sleeping.  Appellant further stated that F.G. looked him
in the eye as he told her to move over and give him a pillow.  Appellant testified that he took a pillow
from the bed and slept on the floor. 
Appellant further testified that he got up one time during the night and
went to the bathroom.

            Ultimately,
the jury found Appellant guilty of aggravated sexual assault of a child and
indecency with a child.[5] 
Following a trial on punishment, only the conviction for one count of
sexual assault of a child was submitted to the jury.  The jury assessed Appellant’s punishment at
imprisonment for fifteen years.  The
trial court sentenced Appellant accordingly, and this appeal followed.

 

Admissibility
of Prior Sexual Abuse Allegations

            In
his first issue, Appellant argues that the trial court erred by declining to
admit testimony  concerning prior sexual
abuse allegations made by the victim, which contradicted F.G.’s testimony that
she had made no such allegations.  We
will reverse a trial court's decision to exclude evidence only if the trial
court abused its discretion.  Mozon
v. State, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999);  Montgomery v. State, 810 S.W.2d
372, 389–90 (Tex. Crim. App. 1990).  A
trial court abuses its discretion when its “decision was so clearly wrong as to
lie outside that zone within which reasonable persons might disagree.”  Cantu v. State, 842 S.W.2d 667,
682 (Tex. Crim. App. 1992); Wofford v. State, 903 S.W.2d 796, 799
(Tex. App.–Dallas 1995, pet. ref’d).  Our
inquiry on appeal is whether the result was reached in an arbitrary or
capricious manner.  See Montgomery,
810 S.W.2d at 380.  Therefore, we uphold
a trial court's evidentiary ruling if it is reasonably supported by the record
and is correct under any theory of law applicable to the case.  See Jones v. State, 833 S.W.2d
118, 125 n.15 (Tex. Crim. App. 1992).

            In
the instant case, Appellant, on cross examination, asked F.G. if this sort of
experience had ever happened to her before. 
F.G. answered that it had not. 
Appellant then sought to question F.G. concerning someone named
D.B.  The State objected, and a bench
conference was conducted.  

            During
the bench conference, the State clarified its objection, arguing that Appellant
was improperly attempting to elicit testimony concerning prior sexual
conduct.  Appellant contended that it was
his understanding that F.G. had previously been sexually assaulted and he
wanted to question her about that incident. The trial court concluded that
since in her testimony F.G. had already denied ever being sexually assaulted,
it was not going to allow Appellant to question her further with regard to
something she indicated had not happened. 
Appellant further argued that he wished to introduce evidence that F.G.
was sexually assaulted by D.B., and that such evidence would tend to show that
F.G. had a motive to report the event the way she did.  Appellant explained that it is well known in
medical annals that when children are victims of sexual assault, they sometimes
suffer from transference syndrome, that is, they transfer blame for a previous
sexual assault to another individual. 
Appellant further argued that the reference to “past sexual behavior” in
Texas Rule of Evidence 412 does not include being a victim of sexual assault.[6]  The trial court sustained the State’s
objection.

            Subsequently,
Appellant was permitted to further cross examine F.G. outside the jury’s
presence.  The following exchange between
Appellant’s trial counsel and F.G. occurred:

 

[APPELLANT’S
COUNSEL]:  Now, [F.G.], you recall I had
asked you a question earlier about whether or not you had ever experienced any
type of a sexual assault before in your life. 
Do you remember that question?

 

                [F.G.]:  Yes, sir.

 

[APPELLANT’S
COUNSEL]:  Okay.  Well, I just have a couple -- couple of more
questions for you in that -- in that same area. 
Okay?

 

Okay.  One of the questions is have you ever
reported to someone else that you have been the victim of a assault?

 

                ....

                

                [F.G.]:  I’ve never been assaulted by someone after
this.

 

[APPELLANT’S
COUNSEL]:  Okay.  And have you ever told someone else that you
were?

 

                [F.G.]:  No, because I’ve never been.

 

                [APPELLANT’S
COUNSEL]:  Okay.  So your answer is no; right?

 

                [F.G.]:  Yes.

 

[APPELLANT’S
COUNSEL]:  Okay.  So if someone else says that you did, they’re
not telling the truth, are they?

 

                [F.G.]:  No, sir.

 

 

                Thereafter, Appellant elicited testimony from his mother,
Patricia Manville, outside the jury’s presence. 
Manville stated that in spring 2001, F.G. and her sister came over to
her house.  While at her house, F.G. and
her sister told Manville that someone named D.B. had molested them and two
other children by putting his finger in their privates.  Manville testified that she told F.G.’s
mother what the girls had told her, but never reported the matter to the
authorities.  Manville further testified
that she never told anyone what F.G. told her until her testimony in Appellant’s
case.

            Appellant
offered Manville’s testimony “for impeachment purposes, as well as to show that
there was an allegation of sexual conduct” where F.G. “testified that she never
made any such allegation ever before.” 
The court overruled Appellant’s request. 


            On
appeal, Appellant argues that Manville’s testimony concerning F.G.’s prior
allegations that she was sexually assaulted should have been admitted as a
prior inconsistent statement.  Before the
trial court may admit extraneous evidence of a prior inconsistent statement,
the witness that purportedly made the statement must be told the contents of
such a statement, the time and place, and person to whom it was made, and must
be afforded an opportunity to explain or deny such a statement.  See Tex.
R. Evid. 613; see Huff v. State, 576 S.W.2d 645, 647 (Tex.
Crim. App. [Panel Op.] 1979).  If the
witness unequivocally admits having made the statement, extrinsic evidence
concerning the statement is inadmissible. 
Id.  Because the
rule is designed to give the witness an opportunity to explain prior
inconsistencies, the opposing party must provide the witness enough information
to explain the prior statement or to admit or deny it.  Fields v. State, 966 S.W.2d
736, 741 (Tex. App.–San Antonio 1998), rev’d on other grounds, 1 S.W.3d
687 (Tex. Crim. App. 1999).  Merely
asking the witness if she had ever said anything different to anyone at any
time leaves the witness in the dark as to what the attorney might be
referring.  See id.

            In
the case at hand, during his offer of proof, Appellant failed to inquire of
F.G. as to when she may have previously reported that she was sexually
assaulted, where she made such a statement, or to whom she made such a
statement.  We iterate that we will
uphold a trial court's evidentiary ruling if it is reasonably supported by the
record and is correct under any theory of law applicable to the case.  See Jones, 833 S.W.2d 125
n.15.  As such, since Appellant failed to
lay a proper predicate  for admission of
extrinsic evidence of a prior inconsistent statement, we hold that the trial court
did not err in declining to admit Manville’s testimony when Appellant sought
its admission for that purpose.  See
 Trussell v. State, 585 S.W.2d 736, 739 (Tex. Crim. App. [Panel
Op.] 1979) (the proper foundation must be laid before a prior inconsistent
statement may be used to impeach a witness); see also Ellingsworth v.
State, 487 S.W.2d 108, 112 (Tex. Crim. App. 1972).   Appellant’s first issue is overruled. 

 

Factual
Sufficiency

            In
his second issue, Appellant argues that the evidence is neither factually
sufficient to support the jury’s verdict nor the resulting sentence
imposed.  We initially note that a review
of the evidence for factual sufficiency is inappropriate with respect to the
assessment of punishment.  See Bradfield
v. State, 42 S.W.3d 350, 351 (Tex. App.–Texarkana 2001, pet. ref’d); Kanouse
v. State, 958 S.W.2d 509, 510 (Tex. App.–Beaumont 1998, no pet.); Flores
v. State, 936 S.W.2d 478, 479 (Tex. App.–Eastland 1996, pet. ref’d).  Hence, we decline to conduct a factual
sufficiency review of the evidence on punishment.

            In
conducting a factual sufficiency review of the evidence supporting the jury’s
verdict, we must first assume that the evidence is legally sufficient under the
Jackson standard.  See Clewis
v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).  We then consider all of the evidence weighed
by the jury that tends to prove the existence of the elemental fact in dispute
and compare it to the evidence that tends to disprove that fact.  See Santellan v. State,
939 S.W.2d 155, 164 (Tex. Crim. App. 1997). 
Ultimately, we must ask whether a neutral review of all the evidence,
both for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine our confidence in the jury's determination, or
the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof.  Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Ortiz v. State,
93 S.W.3d 79, 87 (Tex. Crim. App. 2002) (a verdict will be set aside “only if
the evidence supporting guilt is so obviously weak, or the contrary evidence so
overwhelmingly outweighs the supporting evidence, as to render the conviction
clearly wrong and manifestly unjust); see Sims v. State, 99
S.W.3d 600, 601 (Tex. Crim. App. 2003). 
A clearly wrong and manifestly unjust verdict occurs where the jury's
finding “shocks the conscience” or “clearly demonstrates bias.”  Jones v. State, 944 S.W.2d 642,
648 (Tex. Crim. App. 1997).

            Although
we are authorized to disagree with the jury’s determination, even if probative
evidence exists that supports the verdict, see Clewis, 922 S.W.2d
at 133, our evaluation should not substantially intrude upon the jury’s role as
the sole judge of the weight and credibility of witness testimony.  Santellan, 939 S.W.2d at
164.  It is not enough that we might
harbor a subjective level of reasonable doubt to overturn a conviction that is
founded on legally sufficient evidence.  See
Watson v. State, No. PD-469-05, 2006 WL 2956272, at *7 (Tex. Crim.
App. Oct. 18, 2006).  Where there is
conflicting evidence, the jury’s verdict on such matters is generally regarded
as conclusive.  See Van Zandt v.
State, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref’d).  We cannot declare that a conflict in the
evidence justifies a new trial simply because we disagree with the jury’s
resolution of the conflict.  See Watson,
2006 WL 2956272, at *7.

            In
the case at hand, Appellant argues that the testimony of Deputy Kalinda
Franklin with regard to F.G.’s police statement indicates a discrepancy in F.G.’s
testimony that contradicts her in court testimony in support of Appellant’s
conviction.  The police report prepared
by Franklin, a portion of which Appellant quotes in his brief, states in
pertinent part as follows:

 

....  The victim states she and the baby were
asleep when the suspect, Jason Miller, entered the bedroom and closed the
door.  Victim states that Holly and
Nathan were in the living room sleeping on the fold out couch bed.  The victim stated the baby was against the
wall and she was to the outside of the bed. 
Jason told her to scoot over and he laid down and pulled the victim’s
left leg and placed it between his legs and lifted up her shirt.

 

The victim states
she was wearing a tee shirt, shorts[,] and panties and the suspect was wearing
a tee shirt, polo brand blue with two red stripes and blue jeans.  Victim states he wore these clothes during
the entire assault.  The victim states
the suspect lifted her tee shirt and began rubbing her stomach and breasts and
kissing her on the lips.  Suspect then
got up and went to the restroom and came back in the bedroom and closed the
door.  Victim states she was lying on her
back pretending to be asleep when suspect began kissing her on her tee tee over
her shorts, suspect got on top of her and began humping on her body and kissing
her on the lips.  Shortly afterward
suspect again went to the restroom and came back to the bed and spread her legs
apart and pulled her shorts and panties to the side of her leg and used his finger
to penetrate her place where she poo poos and marked the place on a drawing for
Jennifer Mitchell where he penetrated her body. 
This drawing is in the custody of Jennifer Mitchell.  The suspect pulled the victim[’]s arms up
above her head and placed them around his neck and told her to keep this a
secret.  The suspect then took the victim’s
hand and pulled it to his pants where he tried to place the victim’s hand on
his “bad part” (penis).  The victim
states she pulled her hand away and the baby began to move around on the
bed.  The suspect then got up and took a
pillow from the bed and laid down on the floor next to the table where the
clock was and went to sleep.  The victim
states that the suspect did not put any body part or object into her “pee pee”
(vagina)[,] but did pull on her “tee tee.”

 

 

While F.G.’s in court testimony is
not identical in all aspects to Franklin’s account in her report of F.G.’s
statement to police,[7] the jury nonetheless remains the sole
judge of the weight and credibility of witness testimony.  See Santellan, 939 S.W.2d at
164.  We iterate that we cannot declare
that a conflict in the evidence justifies a new trial even were we to disagree
with the jury’s resolution of the conflict. 
See Watson, 2006 WL 2956272, at *7.  Furthermore, Appellant has not cited nor are
we aware of any authority supporting the proposition that, as a matter of law,
a witness’s statement to police carries a greater evidentiary weight than her
in court testimony.

            We
have reviewed the record in its entirety. 
Having done so, we conclude that the jury was entitled to find that F.G.’s
live testimony was a more accurate portrayal of her experience than Franklin’s
account of her statement to police or Appellant’s testimony with regard to what
transpired on the date in question.  Our
review of the record as a whole, with consideration given to all of the
evidence, both for and against the jury’s finding, has not revealed to us any
evidence that causes us to conclude that the proof of guilt is so obviously
weak or is otherwise so greatly outweighed by contrary proof as to render
Appellant’s conviction clearly wrong or manifestly unjust.  Therefore, we hold that the evidence is
factually sufficient to support the jury’s verdict.  Appellant’s second issue is overruled.

 

Outcry
Witness Testimony

            In
his third issue, Appellant argues that the trial court erred in permitting
hearsay testimony.  Specifically,
Appellant contends that the trial court improperly admitted the video taped
interview of F.G. through the State’s witness, Jennifer Mitchell.      

            As
a prerequisite to presenting a complaint for appellate review, the record must
show that the complaint was made to the trial court by a timely request,
objection, or motion that stated the grounds for the ruling that the
complaining party sought from the trial court with sufficient specificity to
make the trial court aware of the complaint. 
See Tex. R. App. P. 33.1(a);
Duran v. State, 163 S.W.3d 253, 256 (Tex. App.–Fort Worth 2005,
no pet.) (Appellant failed to preserve error where he did not object to the
outcry statement or to the outcry witness’s testimony concerning the outcry
statement on the basis of reliability.).

            Appellant
states in his brief that he timely objected and that his objection was
overruled.  However, the record indicates
otherwise.  Following F.G.’s testimony,
the record indicates that the subject of F.G.’s video taped interview arose
outside the jury’s presence.  The State
informed the trial court that it intended to offer the video tape as an
exhibit.   The trial court asked
Appellant if he would have any objection to it, to which Appellant responded, “Well,
actually, I’m still trying to decide that, Your Honor.”  Later, during Mitchell’s testimony, the State
offered the videotaped interview.  The
trial court again asked Appellant if he had any objection to its
admission.  Appellant responded, “Your
Honor, the defendant has no objection to this tape being exposed or presented
to the jury.”  We hold that Appellant
failed to preserve the error of which he now complains on appeal.  Appellant’s third issue is overruled.

 

Ineffective
Assistance of Counsel

            In
his fourth issue, Appellant argues that he received ineffective assistance of
counsel.  The proper standard by which to
gauge the adequacy of representation by counsel is articulated in Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674
(1984).  See also Hernandez v.
State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).  The test set forth in Strickland
requires a two-step analysis:

 

1.             Did
the attorney’s performance fail to constitute “reasonably effective assistance,”
i.e., did the defense attorney’s representation fall below an
objective standard of reasonableness under prevailing professional norms? 

 

2.             If
so, was there a reasonable probability that, but for counsel’s unprofessional
errors, the result of the proceedings could have been different?

 

 

See Strickland, 466 U.S. at 694, 104 S. Ct. at
2068.  The test in Strickland
is properly applied to the punishment phase of a noncapital case as well.  See Hernandez, 988 S.W.2d at
772.  

            A
“reasonable probability” was defined by the Supreme Court as a “probability
sufficient to undermine confidence in the outcome.”  Id.  Counsel is strongly presumed to have rendered
adequate assistance and to have made all significant decisions in the exercise
of reasonable professional judgment.  See
Hernandez, 726 S.W.2d at 55. 
The burden is on the appellant to overcome that presumption.  See Burruss v. State, 20 S.W.3d
179, 186 (Tex. App.–Texarkana 2000, pet. ref’d).  The appellant must show specific acts or
omissions that constitute ineffective assistance and affirmatively prove that
those acts fall below the professional norm for reasonableness. Id.  

            After
proving error, the appellant must affirmatively prove prejudice.  Id.  The appellant must prove that his attorney's
errors, judged by the totality of the representation and not by isolated
instances of error, denied him a fair trial. 
Id.  It is not
enough for the appellant to show that the errors had some conceivable effect on
the outcome of the proceedings.  Id.  He must show that there is a
reasonable probability that, but for his attorney’s errors, the jury would have
had a reasonable doubt about his guilt.  Id.


            In
the case at hand, Appellant proffers multiple reasons as to why his trial
counsel’s actions fell below the professional norm.  However, even assuming arguendo that the
actions of Appellant’s trial counsel, as noted in Appellant’s brief, satisfied
the first prong of the Strickland test, Appellant must still
affirmatively prove prejudice.  See Burruss,
20 S.W.3d at 186.  It is not enough for
the appellant to merely show that the errors had some conceivable effect on the
outcome of the proceedings.  Id.


            Despite
repeated readings of Appellant’s brief, we can uncover no argument addressing
the second prong of the Strickland test.  Rather, Appellant makes only the following
argument that is possibly attributable to the second prong of Strickland:

 

This was a
defensible case that was not supported by sufficient evidence to support a jury
verdict of guilty, nor the assessed punishment of 15 years incarceration.  That, in and of itself, represents the nature
of the direct harm produced by the trial counsel conduct in the trial of this
matter.  With such serious deficiency in
regard to the Appellant’s 6th amendment rights in regard to effective
assistance of counsel, the trial court results should be vacated and this court
issue a mandate for new trial.

 

 

We iterate that the burden of proof
as to this issue rests squarely upon Appellant. 
See Burruss, 20 S.W.3d at 186.  As such, we will neither surmise nor devise
our own conclusions absent some cogent argument on Appellant’s behalf that but
for his counsel’s alleged unprofessional errors, there exists a reasonable
probability that the result of the proceedings would have been different.  We hold that Appellant has failed to meet his
burden under Strickland. 
Appellant’s fourth issue is overruled.  

 

Conclusion

            Having
overruled Appellant’s first, second, third, and fourth issues, we affirm
the trial court’s judgment.

 

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

 

 

 

Opinion
delivered November 15, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1]
Appellant’s mother’s house had two bedrooms as well as a sleeper sofa.





[2] F.G. further testified that she was able to
see because the light in the closet had been left on.  





[3] F.G. described “humping” as “moving on your
body” as in what dogs do to one another.





[4] Other witnesses also testified on behalf of
the prosecution and the defense. 





[5] Appellant was charged with two counts of
aggravated sexual assault—one count relating to the penetration of F.G.’s
sexual organ with his finger and a second count relating to the penetration of
F.G.’s anus with his finger.  The jury
found Appellant “not guilty” of the second count.





[6] The trial court stated to Appellant that if he
could provide a witness who would testify concerning allegations of sexual
assault by D.B., such testimony would be accepted outside the jury’s presence.





[7]
But see Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)
(touching amounted to penetration where contact with victim’s anatomy could
reasonably be regarded as more intrusive than contact with the victim’s outer
vaginal lips).