Lloyd BURRUSS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–99–00039–CR.

Court of Appeals of Texas,
Texarkana.

Submitted March 14, 2000.

Decided April 27, 2000.

180

Gary L. Waite, Sydney Young, Paris, for appellant.

Jack O. Herrington, County Atty., Clarksville, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Lloyd Burruss was charged with the aggravated sexual assault of two of his daughters on seven separate occasions, the first occurring on or about March 31, 1996, and the last on or about August 31, 1998. The cases were consolidated and tried to-

gether. Burruss pleaded not guilty. A jury found him guilty on all seven counts and assessed punishment at ninety-nine years' imprisonment for each offense. The trial court sentenced Burruss to serve six consecutive ninety-nine-year sentences, and ordered the seventh ninety-nine-year sentence to run concurrently. This appeal involves the first conviction, docketed in this Court as No. 06–99–00039–CR.

The evidence showed that Burruss abused the victims orally, vaginally, and anally on different occasions. On some of the occasions the assaults involved physical violence and were accompanied by threats of injury. Burruss does not challenge the sufficiency of the evidence, but in five points of error he contends that the trial court erred by denying his motion to suppress a statement he made to police, the trial court's voir dire procedure deprived him of a fair and impartial jury, and he was denied effective assistance of counsel at trial. We overrule these points and affirm the judgment.

Burruss first contends that the trial court erred by denying his motion to suppress his statement to law enforcement officers that he had sexually abused his daughters. The trial court held a hearing on the motion to suppress. The testimony at the hearing showed that deputies questioned Burruss after Burruss went to the sheriff's office to inquire about efforts to locate his wife, who had been missing. Burruss was not yet a suspect in his wife's disappearance because the officers did not know whether she disappeared as a result of foul play. The interview took place at the sheriff's office, and at various times Deputy Larry Spangler, Deputy John Grantham, and Constable Tim Shimpock were in the room.

Spangler testified that he orally gave Burruss *Miranda* [1] warnings at the beginning of the interview as a precaution, because he was not sure at the time whether Burruss would be a witness or a suspect. Burruss signed a printed waiver form indicating that he understood his rights and waived them. Spangler testified that he did not indicate on the form any charge against Burruss because at the time there was no charge. The officers made an audiotape of the interview.

The interview lasted about two hours without any break. Near the end, Shimpock left the room to take a telephone call. Spangler testified that he concluded the interview at that time, and Burruss voluntarily left the office and went outside, where he stopped and smoked a cigarette. After receiving word from Shimpock minutes later, Spangler sent Grantham to recall Burruss. Spangler testified that the interlude lasted approximately three minutes. Shimpock testified that the telephone call he received was an anonymous tip that Burruss had been having sexual relations with his children. Spangler testified that Shimpock told him that he needed to ask Burruss about molesting his children.

Spangler testified that when Burruss returned, he asked him, "Did you have sex with your children?" Burruss replied, "Yes." Spangler then asked, "You're telling me after I read your Miranda warnings to you and you understood them, that you had sex?" Burruss then responded, "Not like you're saying." Spangler then asked Burruss what he meant, and Burruss replied that he had put his finger in the girls one time, but he was sorry. Spangler said Burruss then "talked on about some more stuff." Spangler then asked Burruss to give a written statement, but at that point Burruss invoked his *Miranda* rights and refused.

The trial court suppressed the audiotape recording with the agreement of the prosecutor, but admitted Burruss' oral statement that he had sexual contact with his daughters.[2]

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Burruss did not contend at trial and does not contend here that his oral statements

Burruss contends that his statement should have been excluded because he was not given his *Miranda* rights again after the interview resumed. He contends that the warnings and waiver from the beginning of the interview about a missing person do not extend to questions asked two hours later about a different issue after officers had already concluded the interview.

■ At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997). Our review is limited to determining whether the court abused its discretion. The general rule is that an appellate court should afford almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.* We are also to afford such deference to a trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Id.* We may review *de novo* those questions not turning on credibility and demeanor. *Id.*

■ U.S. CONST. amend. V and TEX. CONST. art. I, § 10 protect individuals from compelled self-incrimination. These rights are enforced for federal constitutional purposes by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and for state law purposes by TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp.2000). *See Jones v. State,* 944 S.W.2d 642, 650 n. 11 (Tex.Crim.App. 1996); *Alvarado v. State,* 853 S.W.2d 17, 20 (Tex.Crim.App.1993). Both *Miranda* and Article 38.22 apply only to statements made as a result of custodial interrogation. *Rodriguez v. State,* 939 S.W.2d 211, 215 (Tex.App.-Austin 1997, no pet.).

■ Arguably, Burruss' initial "yes" to Spangler's question was not the product of custodial interrogation. Under an objective standard, Burruss was not in custody. *See Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). Burruss returned voluntarily to answer Spangler's question, and the police did not have probable cause to arrest him until after he answered affirmatively. Moreover, Burruss did not contend at trial and does not contend on appeal that the statement should have been excluded because it was not taken in accordance with Article 38.22, but only that it was inadmissible because he was not given his *Miranda* warnings again. The State contends simply that the *Miranda* warnings given at the beginning of the interview were sufficient to inform Burruss of his rights and that his waiver of those rights was effective to render the statement admissible. We agree.

In *Stiles v. State,* 927 S.W.2d 723, 729 (Tex.App.-Waco 1996, no pet.), the court held that "[w]hether or not law enforcement officials subsequently read the warnings . . . again each time he was interrogated is irrelevant." That case involved a defendant who was twice read his rights when arrested, refused to talk, later reinitiated the conversation, and was reminded of but not reread his rights before making each of two statements. *Id.* at 728–29.

In *Franks v. State,* 712 S.W.2d 858, 860 (Tex.App.-Houston [1st Dist.] 1986, pet. ref'd), the court held the defendant's statements admissible where police began interrogating him, interrupted their interrogation for three and one-half hours, and then took his statement without rereading him his rights. The police did remind the defendant that he had previously been read his rights. *Id.* at 861.

In *Flemming v. State,* 949 S.W.2d 876, 879–80 (Tex.App.-Houston [14th Dist.]

should have been suppressed because the trial court suppressed the audiotape. With some exceptions, oral statements are inadmissible

unless a proper electronic recording is made. TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp.2000).

1997, no pet.), the court held the defendant's statements admissible even though the officer failed to reread the defendant his rights after resuming the interrogation, but reminded him that his rights had been read previously. The court found that a magistrate had read the defendant his rights after his arrest, and the police officer had warned him again before beginning the initial interrogation. *Id.* at 878.

Spangler warned Burruss of his rights at the beginning of the interview. Burruss signed a written waiver of his rights. The questioning broke off, but resumed three minutes later. Burruss indicated that he understood he had been read his rights. Burruss invoked his right to counsel when he terminated the interrogation, indicating that he remembered the warnings and understood them. In these circumstances, the second phase of the questioning was merely a continuation of the interrogation process, and there was not such a break in the interrogation that required the giving of new warnings. *See Dunn v. State,* 721 S.W.2d 325, 338 (Tex.Crim.App.1986). In this situation, the warnings were sufficient.

The fact that police interviewed Burruss about a different subject is of no consequence. As the Court of Criminal Appeals said in *Dunn:*

> Neither our constitutional nor statutory law requires that a defendant be rewarned where there is a transition from questioning him regarding one offense to questioning him regarding another offense, nor have we found any requirement in our law that the *Miranda* warnings must be limited to any specific unlawful conduct, nor do we know of any reason which requires that it be so limited, considering the purpose of the *Miranda* rule.

*Dunn v. State,* 721 S.W.2d at 338. The trial court did not abuse its discretion in refusing to suppress Burruss' statement.

In his third and fourth points of error, Burruss contends that the trial court's voir dire process violated his right to a fair and impartial jury under the United States and Texas Constitutions. While outlining the procedures for voir dire, the trial court made the following statement:

> Now, Mr. Burtner [defense counsel], we will take whatever length of time is required to identify those jurors [with a possible prejudice], as such. And we will have those jurors we identify come back in chambers with the attorneys and the defendant, and we will talk to them individually so that you can talk very frankly to them and they can talk very frankly to us, without making statements in front of the whole panel that might prejudice everybody.

The court then told the venire that it had instructed the lawyers "to ask the questions in such a way as to get each of you who may have any problem simply to indicate that you have a problem or you may have a problem." The court then said it would talk with those venire members privately. In fact, the court itself questioned the panel and agreed to meet privately with individual venire members who had heard anything about the case or who had a problem sitting on a jury in a child molestation case.

During voir dire, the trial court asked the panel members whether they could consider the entire range of punishment, from five years' probation to ninety-nine years or life imprisonment. No panel member answered negatively. The prosecutor also asked the venire whether they could consider the full range of punishment given that they could be confronted with "millions of fact situations that could fit every possible range of punishment." Again, there was no negative response.

Defense counsel later asked the venire whether they understood that "when you said you could consider [the full range of punishment], did you understand that what you were basically agreeing to was that in a proper case you could give probation for sexual assault of a child?" Thirty-five venire members then indicated they could

not give probation for sexual assault of a child.

After the court retired to question individual venire members, Burruss moved to have the court call these thirty-five venire members for more detailed examination. The court refused on the ground that defense counsel's question was an attempt to commit the prospective jurors to a particular position on probation. The court ruled that as a result of both its questions to the venire and the State's questions, the venire had already indicated that they could apply the full range of punishment, and that defense counsel's question was an improper question. The court denied Burruss' motion to challenge those venire members for cause. *Id.* Later, however, the court granted Burruss' request for nine additional peremptory strikes, which Burruss said he needed to remedy the court's earlier action.

 The right to question the members of the venire in order to intelligently exercise peremptory challenges is essential to the constitutional right to an impartial jury under both the state and federal constitutions. *Jones v. State,* 982 S.W.2d 386, 391 (Tex.Crim.App.1998); *Linnell v. State,* 935 S.W.2d 426, 428 (Tex.Crim.App.1996). A defendant is therefore harmed when he is deprived of voir dire sufficient to allow him to decide intelligently those jurors he may wish to strike. *Gonzales v. State,* 2 S.W.3d 600, 600 (Tex.App.-Texarkana 1999, pet. ref'd). The conduct of voir dire rests within the discretion of the trial court, and only an abuse of such discretion requires reversal on appeal. *Powell v. State,* 897 S.W.2d 307, 311 (Tex.Crim.App. 1994).

Burruss contends that the trial court's statements both before and during voir dire misled him to believe that if he identified individual venire members who had a prejudice against probation in sexual assault cases, the court would allow him to individually examine each of those members. He contends that he was harmed, even though the court agreed to give him nine extra strikes, because he was not allowed to fully inform himself of the venire members' prejudices.

The State contends that the trial court only agreed to conduct individual voir dire of venire members who had heard about the case or had a problem sitting on a jury in a child molestation case. Reading the court's comments in context, however, we are inclined to think it intended to conduct individual voir dire for any juror who indicated a prejudice or problem.

We are not convinced from the record, however, that the court went against its outlined procedure. In all likelihood, the court would have consented to conduct individual voir dire for those of the venire who, in response to what the court felt was a proper question, indicated they could not consider probation in a case involving sexual assault of a child.

 It is not necessary for us to consider this question further because Burruss' action in withdrawing his application for probation before the punishment phase of the trial was conducted waived any complaint he had about being deprived of an adequate opportunity to voir dire the venire on consideration of probation, or at least rendered any error harmless. We note that Burruss did not withdraw his application for probation for the reason that his counsel was unable to adequately question the panel members about their views on probation. He withdrew his application because his counsel told the court:

> We have decided that we are not going to put him [Burruss] on to prove up probation. We have discussed the fact that at this point in time we have to do that in order to argue that to the jury; but we have also discussed the fact that if he takes the stand, Mr. Herrington would be able to cross examine him again about the events that we have been in trial on, and it is our decision that we will not put him on.

THE COURT: Mr. Burruss, is that correct?

THE DEFENDANT: Yes, sir.

. . . .

THE COURT: Do you realize that you will not be eligible for probation?

THE DEFENDANT: Yes, sir.

We also note that the trial court gave Burruss nine additional peremptory challenges, which his counsel used to strike panel members who indicated they would have difficulty giving probation in a case involving the sexual assault of a child. Burruss also did not object that objectionable jurors were seated. We find no reversible error.

 Burruss also contends that he was deprived of effective assistance of counsel. To prevail on an ineffective assistance of counsel claim, Burruss must show that his attorney's representation fell below a reasonable standard of effectiveness and that the deficient performance was so serious that it prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *McFarland v. State*, 845 S.W.2d 824, 842 (Tex.Crim.App.1992). To meet this burden, Burruss must prove by a preponderance of the evidence that his attorney's representation fell below the standard of prevailing professional norms, and that there is a reasonable probability that, but for his attorney's deficiency, the result of the trial would have been different. In ruling on an ineffective assistance of counsel claim, we consider the totality of the evidence before the jury. Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.

 Our review of counsel's representation is highly deferential; we indulge a strong presumption that his conduct falls within a wide range of reasonably effective representation. The burden is on Burruss to overcome that presumption. He must show specific acts or omissions that constitute ineffective assistance and affirmatively prove that those acts fall below the professional norm for reasonableness. We will make a full inquiry into counsel's strategy or tactics only if, from all appearances after trial, there is no plausible basis in strategy or tactics for his actions. *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim.App.1980). We will not second-guess counsel's trial strategy, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex.Crim.App.1979). The fact that another attorney, including Burruss' counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State*, 997 S.W.2d 695, 704 (Tex. App.-Texarkana 1999, no pet.).

 After proving error, Burruss must affirmatively prove prejudice. *McFarland v. State*, 845 S.W.2d at 842. He must prove that his attorney's errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial. It is not enough for Burruss to show that the errors had some conceivable effect on the outcome of the proceedings. He must show that there is a reasonable probability that, but for his attorney's errors, the jury would have had a reasonable doubt about his guilt.

Burruss cites four examples of his trial counsel's alleged deficient performance: (1) failure to file a motion to change venue, (2) failure to file a motion for severance, (3) failure to request additional strikes in voir dire, and (4) failure to object to numerous instances of hearsay, inadmissible opinion testimony, and evidence of inadmissible extraneous offenses. We address each of these contentions.

## Motion to Change Venue

 Burruss contends that the case was well known in the community, which made it more difficult to obtain an impartial jury. He contends his trial counsel

was deficient for failing to file a motion to change venue. The record shows that numerous venire members had heard at least something about the case. Burruss testified that he had a friend use a computer to call every telephone number listed with a 632 prefix and ask for information about his missing wife. One venire member stated that he had received such a telephone call.

Burruss' assertions do not constitute affirmative proof that his trial counsel's decision fell below a professional norm for reasonableness. The record is silent as to counsel's strategy about venue. There are several reasons why Burruss' counsel may have decided not to seek a change of venue. He may have considered that the county where the case was tried had a more favorable atmosphere than adjoining counties. It may have been easier to secure the presence of friendly witnesses at the trial. And it may have been difficult to obtain the affidavits necessary to sustain a motion to change venue. *See* TEX.CODE CRIM. PROC. ANN. art. 31.03(a) (Vernon 1989). In any event, there is no showing of what counsel's venue strategy was, and Burruss has not carried his burden to show that his counsel's strategy in this respect was inappropriate under the existing circumstances. Burruss has also failed to show that he was not as likely to receive as fair a trial in his home county as he could in some other county, given the highly inflammatory nature of the charges against him.

**Motion to Sever**

 Burruss contends that his attorney failed to file a motion for severance, knowing that the trial court had discretion to assess consecutive sentences for the convictions in each case tried together. Burruss was tried for seven specific acts. The earliest two occurred on March 31, 1996, and November 30, 1996. Under the law in effect at the time of these offenses, Burruss had a right to a severance, but because he agreed to try the cases together, his sentences must run concurrently. Act of May 26, 1995, 74th Leg., R.S., ch.

596, 1995 Tex. Gen. Laws 3435, *amended by* Act of May 31, 1997, 75th Leg., R.S., ch. 667, § 2, 1997 Tex. Gen. Laws 2251 (current version at TEX. PEN.CODE ANN. § 3.03 (Vernon Supp.2000)). The trial court sentenced him to concurrent ninety-nine-year terms for these two offenses. Had Burruss chosen separate trials for each of these charges, the trial court could have sentenced him to serve consecutive sentences. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3592, *amended by* Act of May 31, 1997, 75th Leg., R.S., ch. 667, § 3, 1997 Tex. Gen. Laws 2252 (current version at TEX. PEN.CODE ANN. § 3.04(b) (Vernon Supp. 2000)).

The later offenses allegedly occurred in October 1997 or later. The trial court had discretion to decide whether the sentences for these offenses would run concurrently or consecutively. TEX. PEN.CODE ANN. § 3.03(b)(2) (Vernon Supp.2000). To secure a severance, Burruss would be required to show prejudice from joinder. TEX. PEN.CODE ANN. § 3.04(c) (Vernon Supp.2000). Assuming he could make such a showing, the trial court still would have had the discretion to let his sentences run concurrently or consecutively. TEX. PEN.CODE ANN. § 3.04(b) (Vernon Supp. 2000). Had Burruss chosen to sever some or all of the charges, he would have been in no better position to receive concurrent sentences, and could have been in a worse position. Consequently, his counsel's actions in not seeking a severance were not deficient.

**Additional Strikes During Voir Dire**

Burruss contends that if we find that he waived his complaint about the voir dire, we should find his counsel deficient. We disagree. Because we found that the trial court did not abuse its discretion in refusing to allow Burruss individual voir dire, or in any event that the error was harmless because of the additional strikes counsel did request, as well as Burruss' voluntary withdrawal of his application for probation, we do not find that counsel's performance in this area was professionally inadequate.

**Inadmissible Hearsay, Opinion Testimony, and Extraneous Offense Evidence**

Burruss cites several examples of inadmissible hearsay, opinion testimony, and evidence of extraneous offenses to which he contends his trial counsel should have objected. He complains of the following evidence: (1) witness Bonnie Green testified about details the victims' sister told her about Burruss' sexual assault on them; (2) witness Patsy Dial, a Child Protective Services worker, testified about details that one of the victims and the victim's brother told her about Burruss' sexual assault on them; (3) Texas Ranger Roger Lough repeated statements that other witnesses in the case had made to him; (4) Dr. Angela Tseng, Dial, and Lough all gave their opinions that the victims were telling the truth; and (5) the victims testified to numerous extraneous acts allegedly perpetrated on them by Burruss.

■ Assuming that this evidence could have been excluded, Burruss makes no attempt to demonstrate that, in these instances, counsel's failure to object fell below the standard of prevailing professional norms, nor does he attempt to show that his counsel's acts were not trial strategy. He also makes no attempt to show there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. As the State observes, the most damaging testimony came from Burruss' daughters. Burruss' trial attorney could have made a tactical decision that he could not keep the information from coming before the jury, and that he could use such testimony to impeach the State's chief witnesses. Additionally, counsel may have made a strategic decision with respect to these matters. Defense counsel's entire defense was that the victims and their relatives were out "to get" Burruss because they believed he murdered his wife, but were unable to prove it, and that they thus conspired to fabricate a tale of repeated sexual abuse of his daughters as a means of "putting him away." In order to prove such a conspira-

cy, it was necessary to show that the family members and others attributed the sexual abuse to Burruss. In this regard, it is important to note that there was medical evidence showing that the girls had been sexually abused, but the defense submitted testimony that another relative of the girls had committed the abuse rather than their father, Burruss.

■ The evidence of extraneous acts against the victims was admissible pursuant to TEX.CODE CRIM. PROC. ANN. art. 38.37 (Vernon Supp.2000). The failure to object to admissible evidence is not ineffective assistance.

■ Counsel's failure to object to witnesses expressing their opinions that the victims were telling the truth was error unless it was trial strategy to avoid offending the jury by attacking the victims, but we do not find this isolated instance of deficient performance to constitute ineffective assistance under the totality of the circumstances. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Crim.App.1986).

For the reasons stated, we affirm the judgment of the trial court.