# NOS. 12-15-00040-CR
# 12-15-00041-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MARCUS DONEL POLLEY, APPELLANT* | § | *APPEALS FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *THE STATE OF TEXAS, APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Marcus Donel Polley appeals his convictions for driving while intoxicated and possession of marijuana. In two issues, Appellant argues that he received ineffective assistance of counsel. We affirm.

### BACKGROUND

Just before noon on October 10, 2013, while mowing the lawn at a rental property he owned, Charles Curl was disturbed by a vehicle that suddenly drove onto the lawn. The vehicle's lone occupant jumped out of the vehicle and pointed what Curl believed to be a handgun at him.[1] Curl recognized the driver as Appellant, his friend. Appellant momentarily sat back down in the car. But he then exited the vehicle and again made the threatening gesture at Curl. Appellant reentered the vehicle, backed up quickly, struck a tree in Curl's yard, and sped away.

---

[1] Police officers later discovered that Appellant did not have a firearm. He appeared to have used a hand gesture or held some device in his hand that resembled a handgun.

Curl, who was in distress, called 911 and described what happened to him. Moments later, the police received another call that a vehicle had just crashed into a chain link fence not far from Curl's home. Sergeant Keith Hawkins found the vehicle parked at a home with Appellant seated in the driver's seat. Sergeant Hawkins noticed that the chain link fence was under the vehicle, and the vehicle had been damaged. Corporal Al Patterson also arrived on the scene and began investigating the accident.

Based on the calls they received, the officers asked for and obtained Appellant's consent to search the vehicle. Sergeant Hawkins searched the vehicle while Corporal Patterson continued talking to Appellant. Sergeant Hawkins discovered a bag containing marijuana in the rear passenger floorboard. The officers did not disclose this to Appellant until they arrested him.

Although Appellant was conscious and standing on his own, both officers noticed that he was lethargic, sluggish, and seemingly confused. Due to the circumstances and Appellant's condition, the officers called for an ambulance to render assistance to him, but he refused treatment. After talking with Appellant, both officers detected an odor from his breath that, based on their experience, led them to believe that Appellant was under the influence of PCP. Appellant also answered questions inconsistently.[2] After Appellant realized that the officers had begun to investigate whether Appellant was driving while intoxicated (DWI), he declined to answer further questions. Corporal Patterson attempted to perform field sobriety tests, but Appellant refused.[3] Corporal Patterson then requested a blood sample from Appellant, which he declined to provide.

The officers arrested Appellant, transported him to the police station, and obtained a warrant authorizing that a blood specimen be taken. Appellant was then transported to the hospital where a nurse took a blood sample. The specimen tested positive for PCP.

Appellant was charged by information for driving while intoxicated and possession of marijuana in separate cases. He pleaded "not guilty" to both offenses, and the cases proceeded to a jury trial. The jury found Appellant guilty of both offenses. After a hearing, the trial court assessed punishment at ninety days of confinement in the county jail for the possession of a

---

[2] For example, Appellant initially admitted that he drove the vehicle, but later stated that he did not. Appellant also initially failed to confirm his identity.

[3] Corporal Patterson testified that he observed Appellant exhibit "resting nystagmus" while talking with him, which he believed to be consistent with PCP use.

marijuana charge, and 150 days of confinement in the county jail for the DWI charge.  This appeal followed.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Appellant argues in his first issue that he received ineffective assistance of counsel because his trial counsel failed to contest the method by which Corporal Patterson obtained the warrant, and failed to object that the warrant was not produced at trial.

In his second issue, Appellant contends that trial counsel was constitutionally ineffective when he failed to challenge the State's evidence that he knowingly or intentionally possessed marijuana.  Because Appellant alleges in both issues that he received ineffective assistance of counsel, we address them together.

**Standard of Review and Applicable Law**

Claims of ineffective assistance of counsel are evaluated under the two step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). The first step requires the appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065.  To satisfy this step, the appellant must identify the acts or omissions of counsel alleged to be ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness.  *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).  The reviewing court will not find ineffectiveness by isolating any portion of trial counsel's representation, but will judge the claim based on the totality of the representation.  *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

In any case considering the issue of ineffective assistance of counsel, we begin with the strong presumption that counsel was effective.  *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  We must presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy.  *See id.*  Appellant has the burden of rebutting this presumption by presenting evidence illustrating why his trial counsel did what he did.  *See id.*  Appellant cannot meet this burden if the record does not affirmatively support the claim.  *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).  A record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an

ineffectiveness claim.  *See **Kemp v. State***, 892 S.W.2d 112, 115 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd).

Before being condemned as unprofessional and incompetent, defense counsel should be given an opportunity to explain his or her actions.  *See **Bone v. State***, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).  Thus, absent a properly developed record, an ineffective assistance claim must usually be denied as speculative, and, further, such a claim cannot be built upon retrospective speculation.  ***Id.*** at 835.

Moreover, after proving error, the appellant must affirmatively prove prejudice from the deficient performance of his attorney.  *See **Hernandez v. State***, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); ***Burruss v. State***, 20 S.W.3d 179, 186 (Tex. App.–Texarkana 2000, pet. ref'd).  The appellant must prove that his attorney's errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial.  ***Burruss***, 20 S.W.3d at 186.  It is not enough for the appellant to show that the errors had some conceivable effect on the outcome of the proceedings.  ***Id.***  He must show that there is a reasonable probability that, but for his attorney's errors, the jury would have had a reasonable doubt about his guilt or that the extent of his punishment would have been less.  *See **id.***; *see also **Bone***, 77 S.W.3d at 837.

**Blood Specimen Search Warrant**

Appellant argues that the blood specimen test results were the central piece of evidence in the State's case, and that it could not obtain a conviction without the results.  Appellant's argument continues that the warrant was not admitted into evidence, and without it, the probable cause stated in Corporal Patterson's affidavit is unknown.  Appellant also contends that trial counsel should have objected when Corporal Patterson testified that he faxed the affidavit and warrant application to the judge.  Appellant argues that this procedure rendered the warrant ineffective because it failed to satisfy the requirement that the officer provide the magistrate with a "sworn affidavit" prior to obtaining a warrant.  *See* TEX. CRIM. PROC. CODE ANN. art. 18.01(b) (West 2015).

The record shows that Corporal Patterson testified that he "fill[ed] out the search warrant, g[o]t that filled out, [f]ax[ed] it to the Judge.  The Judge [f]axes it.  Back we go to the hospital.  We draw the blood and then we go to the jail."  The corporal also stated later in his testimony that in drafting the affidavit, he included "a [w]hole understanding of the circumstances, explaining to the Judge from the beginning why we were called out, what we saw, all the

4

evidence that we have to believe that he is intoxicated.  And we put that in the search warrant." Corporal Patterson testified that he explained in the affidavit what he had learned during his investigation, and described the evidence leading him to believe that Appellant was intoxicated. He also testified that he obtained the warrant.  The trial judge was the magistrate who issued the warrant in this case.  There is no requirement per se that the warrant be produced at trial.

Trial counsel did not inquire further into the circumstances surrounding Corporal Patterson's acquisition of the blood warrant.  The record is silent about trial counsel's reasons for not pursuing the matter, but there is a strong presumption that counsel's decision was based on sound trial strategy.  *See Jackson*, 877 S.W.2d at 771; *Kemp*, 892 S.W.2d at 115.  Therefore, Appellant has failed to rebut the presumption.

Moreover, the affidavit satisfies the memorialization requirement when it is faxed to the judge.  *Clay v. State*, 391 S.W.3d 94, 100 (Tex. Crim. App. 2013) ("Article 18.01(b)'s requirement that the memorialization take the form of a written affidavit was satisfied in this case by the fact that [the officer] drafted a written affidavit and faxed it to [the magistrate], so that the issuing magistrate had a document to be 'filed' as required.").  Furthermore, the oath of the person making the "sworn affidavit" contemplated by Article 18.01(b) need not always be administered in the corporal presence of the magistrate, so long as sufficient care is taken in the individual case to preserve the same or an equivalent solemnizing function to that which corporal presence accomplishes.  *See id.* at 103.  In *Clay*, the evidence showed that the officer and the magistrate were familiar with each other's voices, and consequently, the telephonic warrant application process satisfied Article 18.01(b).  *See id.*  The record in the instant cases is silent on that issue.

But even if trial counsel was ineffective in failing to inquire whether the "sworn affidavit" requirement was satisfied, a question we do not reach, Appellant failed to show that he suffered prejudice by his trial counsel's representation.  Curl testified that Appellant suddenly drove onto his lawn and pointed what he believed to be a handgun at him.  Appellant sped away, hitting a tree in the process.  Moments later, the officers found Appellant in his damaged vehicle, where he had just crashed into a fence.  While talking to him, the officers noticed that Appellant was lethargic and seemed confused.  They also smelled the odor of PCP, which they recognized from their experience.  Corporal Patterson also observed "resting nystagmus" while talking to Appellant, which he believed to be indicative of PCP use.  Given this information, the officers

had probable cause to believe that Appellant was operating a motor vehicle while not having the normal use of his physical and mental faculties. Additionally, Curl testified that Appellant told him two weeks after the incident that he was sorry for his behavior and admitted that he was under the influence of PCP at the time. Curl also testified that Appellant was known to consume PCP.

Even without the blood warrant test results, and assuming counsel's representation was constitutionally defective in this regard, we cannot conclude that there is a reasonable probability that, but for his attorney's errors, the jury would have had a reasonable doubt about his guilt. *See* **Bone**, 77 S.W.3d at 837.

## Possession of Marijuana

Appellant contends further that trial counsel should have objected to and contested the State's theory that he knowingly or intentionally possessed marijuana. Specifically, Appellant contends that his trial counsel should have objected to the prosecutor's closing argument that Appellant consciously threw the marijuana in the backseat to avoid its detection because it is inconsistent with the evidence. This is because Appellant claims that the video of the arrest shows he was disoriented, lethargic, and unresponsive when police made contact with him, implying that he could not have intentionally or knowingly possessed the marijuana. In essence, Appellant argues that the evidence is inconsistent with the State's theory.

The record does not demonstrate the reasoning behind trial counsel's decision to refrain from objecting to this argument, and we presume that this decision was based on reasonable trial strategy. *See* **Jackson**, 877 S.W.2d at 771; **Kemp**, 892 S.W.2d at 115. Corporal Patterson obtained Appellant's consent to search the vehicle. While he continued to interact with Appellant, Sergeant Hawkins conducted the search and discovered marijuana in plain view on the back seat floorboard. The officers testified that marijuana cigarettes are often dipped in PCP to create a combined drug referred to as "wet." Corporal Patterson asked, prior to the marijuana discovery, whether Appellant had been smoking "wet" based on his behavior and the odor emanating from his breath, which Appellant denied. The corporal opined that he believed someone in Appellant's circumstances "possessed" the marijuana and that someone in his position could have thrown the marijuana in the rear passenger seat to conceal it. The prosecutor's argument can be classified as a reasonable summary and deduction from the evidence, neither of which are objectionable. *See* **Brown v. State**, 270 S.W.3d 564, 570 (Tex.

Crim. App. 2008) (describing permissible grounds for jury argument, including a summary of the evidence and reasonable deductions from the evidence).

Appellant also seems to argue that trial counsel should have objected when Corporal Patterson opined that someone in Appellant's situation had knowingly possessed the marijuana and that it was in his care, custody, and control. Possession means actual care, custody, control or management. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2014). To prove that Appellant possessed the marijuana, the State was required to show that he exercised actual care, custody, control, or management over it, he was conscious of his connection to it, and he knew what it was. *See **Blackman v. State***, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011); ***Brown v. State**,* 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *see also* TEX. PENAL CODE ANN. § 6.03(a), (b) (West 2011) (defining intentionally and knowingly).

There are several factors by which a defendant may, under the unique circumstances of each case, be sufficiently linked to the contraband, including (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See **Evans***, 202 S.W.3d at 162, n.12. It is not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial. *Id.* at 501. The force of the links need not be such as to exclude every other alternative hypothesis except the defendant's guilt. *See **Brown v. State***, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995).

In the instant case, Appellant was the lone occupant of the vehicle when the officers arrived, and he was present when the search was conducted. Sergeant Hawkins discovered the marijuana in plain view of the rear right passenger floorboard, an area Appellant could reach from the driver's seat. Appellant appeared to be under the influence of drugs when arrested. It

appears from the record that the vehicle belonged to Appellant. Appellant answered questions inconsistently and acted in an abnormal manner while talking with the officers. The logical force of all the evidence leads to the conclusion that the jury could have reasonably deduced from the evidence that Appellant intentionally or knowingly possessed the marijuana, and any objection lodged by trial counsel would have been fruitless.

Since the prosecutor's argument and the conclusions drawn from the evidence that he possessed the marijuana were not objectionable, Appellant has not shown that counsel's representation was constitutionally deficient. In any event, the record does not demonstrate the reasoning behind trial counsel's actions.

Appellant's first and second issues are overruled.


## DISPOSITION

Having overruled Appellant's first and second issues, we *affirm* the judgment of the trial court.


**JAMES T. WORTHEN**
Chief Justice

Opinion delivered August 12, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 12, 2015**

**NO. 12-15-00040-CR**

**MARCUS DONEL POLLEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the County Court at Law

of Nacogdoches County, Texas (Tr.Ct.No. CF1400013)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 12, 2015**

**NO. 12-15-00041-CR**

**MARCUS DONEL POLLEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

___

Appeal from the County Court at Law

of Nacogdoches County, Texas (Tr.Ct.No. CF1400014)

___

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*