# NO. 12-16-00005-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHARDONE´ PRICE,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Chardone´ Price appeals her conviction for burglary of a habitation. In her sole issue, Appellant argues that she received ineffective assistance of counsel. We affirm.

### BACKGROUND

Appellant was charged by indictment with the offense of burglary of a habitation, a second degree felony. According to law enforcement reports, Appellant kicked in the front door of Crystal Walker's house, entered the house, and hit Walker. During her assault of Walker, Appellant also accidentally struck Walker's child. Appellant and the State reached a plea agreement in which Appellant agreed to plead "guilty" to the offense, and the State agreed to recommend deferred adjudication community supervision. At the plea hearing, Appellant pleaded "guilty." The trial court accepted Appellant's plea and found sufficient evidence to substantiate Appellant's guilt. After receiving and reviewing a presentence investigation report (PSI), the trial court followed the State's sentencing recommendation, deferred further proceedings without entering an adjudication of guilt, and ordered that Appellant be placed on deferred adjudication community supervision for eight years.

A few months later, the Tyler Police Department arrested Appellant on charges of theft and providing false or fictitious information to a law enforcement officer. Because of these

charges and Appellant's failure to pay certain fees required by her community supervision terms, the State filed an application to proceed to final adjudication on the burglary of a habitation charge. Appellant pleaded "true" to all of the paragraphs in the State's application. The trial court found the allegations to be "true," adjudged Appellant guilty of burglary of a habitation, and assessed her punishment at fifteen years of imprisonment.

Appellant filed a motion for new trial in which she claimed that she received ineffective assistance of counsel. After a hearing, the trial court denied the motion for new trial. This appeal followed.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

In her sole issue, Appellant contends that her trial counsel provided ineffective assistance. Specifically, Appellant argues that her trial counsel should have investigated Appellant's school records and mental health records in order to discover mitigating evidence.

**Standard of Review and Applicable Law**

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test in ***Strickland v. Washington***, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See **Hernandez*** v. State, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Under the first prong of the ***Strickland*** test, an appellant must show that counsel's performance was deficient. *See **Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064. This requires an appellant to demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See **id.***, 466 U.S. at 688, 104 S. Ct. at 2064-65. To satisfy this requirement, the appellant must identify the acts or omissions of counsel alleged to constitute ineffective assistance and affirmatively prove that they fell below the professional norm for reasonableness. *See **McFarland v. State***, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

In any case considering the issue of ineffective assistance of counsel, we begin with the strong presumption that counsel was effective. *See **Jackson v. State***, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We must presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See **id.***; *see also **Okonkwo v. State***, 398 S.W.3d 689, 693 (Tex. Crim. App. 2013). Appellant has the burden of rebutting this presumption by presenting evidence illustrating the reasons for counsel's actions and decisions.

*See Jackson*, 877 S.W.2d at 771. Appellant cannot meet this burden if the record does not affirmatively support the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). Moreover, before being condemned as unprofessional and incompetent, counsel should be given an opportunity to explain her actions. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Thus, absent a properly developed record, an ineffective assistance claim must usually be denied as speculative, and, further, such a claim cannot be built upon retrospective speculation. *Id.* at 835.

When the alleged ineffectiveness is based on a failure to investigate for mitigating evidence, we consider the quantum of evidence known to counsel and whether the known evidence would lead a reasonable attorney to investigate further. *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 527, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)). In other words, we consider whether an appellant provided information that would lead a reasonable attorney to investigate further. *Id.* at 729 (finding that in capital murder context, defendant's denial of mitigating factor considered along with other factors in determining that trial counsel had not been ineffective.). The reviewing court will not find ineffectiveness by isolating any portion of trial counsel's representation, but will judge the claim based on the totality of the representation. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

Under the second prong of the *Strickland* test, the appellant must affirmatively prove prejudice from the deficient performance of her counsel. *See Strickland*, 466 U.S. at 687, 104 S. Ct. 2064; *Burruss v. State*, 20 S.W.3d 179, 186 (Tex. App.–Texarkana 2000, pet. ref'd). The appellant must prove that her counsel's errors, judged by the totality of the representation and not by isolated instances of error, denied her a fair trial. *Burruss*, 20 S.W.3d at 186. It is not enough for an appellant to show that the errors had some conceivable effect on the outcome of the proceedings. *Id.* She instead must show that there is a reasonable probability that, but for her counsel's errors, the outcome would have been different either as to a reasonable doubt about her guilt or the extent of her punishment. *See id.*; *see also Bone*, 77 S.W.3d at 836. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim.

3

App. 1999).  Appellant must prove both prongs of the *Strickland* test by a preponderance of the evidence in order to prevail.  *Tong*, 25 S.W.3d at 712.

**Analysis**

Appellant contends that her attorney should have conducted a more thorough investigation into her school records and mental health records.  She argues that these records would have provided mitigating evidence, and that trial counsel's failure to investigate undermined confidence in the outcome.  To determine whether Appellant met her burden to establish that her trial counsel was ineffective, we analyze the entire record.  *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

When Appellant pleaded "guilty" as part of her plea agreement with the State, the trial court provided several warnings on the record.  The trial court discussed the PSI with Appellant, and Appellant understood that she was to provide "true answers" to the PSI questions and to the interview questions from her community supervision officer.  Appellant further confirmed that she reads, writes, and understands English.  She explained that she was confined in a mental hospital the previous year, but her mother took her out of the hospital before she finished treatment.  She denied seeing a psychiatrist or psychologist.  Appellant confirmed that she had plenty of time to talk to her trial counsel about her case.

The trial court also reminded Appellant that she had a right to a jury trial and explained the role of the jury in the trial.  Appellant's trial counsel then informed the court, and Appellant agreed, that counsel had sufficient time to discuss the nature of the allegations, punishment range, and consequences of entering a guilty plea with Appellant.  Trial counsel believed that Appellant was competent, and the State had no evidence that Appellant was incompetent.  The trial court then recessed the hearing so that the PSI could be completed.

The information in the PSI showed that Appellant had no present physical, medical, or mental impairment, but had been treated previously at East Texas Medical Center—Behavioral Health Center (BHC).  She was not enrolled in special classes in school, and was a student at Tyler Independent School District's PACE High School.  Appellant was identified as literate and having the job skills of cashier and housekeeping.  She was employed as a housekeeper at UT Health Northeast, but was also receiving monthly disability benefits.

The trial court held a hearing to determine Appellant's sentence.  At that hearing, Appellant's trial counsel called the trial court's attention to errors in the PSI.  She also indicated

that she had asked Appellant about an argument between Appellant and her mother that resulted in Appellant's being taken to BHC. Appellant confirmed that she went to BHC. In response to further questions from the trial court, Appellant confirmed that she was pregnant and in the PACE program for high school. She did not identify any errors in her PSI other than the criminal history and the error in her age that her trial counsel had mentioned. Appellant confirmed that she worked at UT Health Northeast. The trial court informed Appellant that if she failed to comply with the conditions of community supervision and it was revoked, she could be sentenced to anywhere from two to twenty years in prison. Appellant again stated that she was satisfied with trial counsel's representation of her.

A few months later, the trial court held a hearing on the State's application to proceed to final adjudication. Appellant pleaded "true" to all of the State's allegations. Appellant reconfirmed that she reads, writes, and understands English. She again mentioned being in a mental hospital after getting into an argument with her mother, but said she did not stay in the hospital long enough for a diagnosis. She stated that she had not been diagnosed with a mental illness and was not under any kind of psychiatric treatment. Appellant also confirmed that she had plenty of time to talk to her trial counsel about her case.

The trial court found the State's allegations in the application to be "true" and adjudged Appellant "guilty" of the offense. Neither the State nor the defense presented evidence in the punishment phrase of the case. The State requested that the trial court sentence Appellant to imprisonment for fifteen years. Appellant's trial counsel conceded that Appellant wasted an opportunity when she violated the terms of her deferred adjudication community supervision. She asked the trial court to consider that Appellant took full responsibility for her actions and that Appellant had no prior criminal history. Trial counsel asked the trial court to assess Appellant's punishment in the "middle of the lower range" of punishment. The trial court assessed Appellant's punishment at fifteen years of imprisonment. After she was sentenced, Appellant once again confirmed that she was satisfied with her trial counsel's representation.

Appellant filed a motion for new trial in which she included a claim that her trial counsel had provided ineffective assistance of counsel. Specifically, in the affidavit attached to her motion, Appellant claimed that trial counsel met with her only at the Smith County Courthouse and did not review discovery materials in any meaningful way. Appellant further claimed that trial counsel did not ask Appellant about special education classes or her treatment at BHC.

Katrina Mosley, Appellant's mother, also provided an affidavit in support of Appellant's motion for new trial. Mosley averred that Appellant had been in special education classes since middle school. She further claimed that Appellant received accommodations and passed a modified TAKS test. Finally, Mosley claimed that a child psychologist had diagnosed Appellant with Attention Deficit Disorder (ADD) and borderline mental retardation.

Appellant attached her records from Tyler Independent School District (TISD) to the motion for new trial. These records showed that Appellant was in special education classes and was a student at TISD's PACE high school program. The records further documented that Appellant met the eligibility criteria as a student with an "Other Health Impairment" based on a diagnosis of Attention Deficit Hyperactivity Disorder (ADHD). The school records also documented that Appellant was pregnant and not taking medications. According to the records, Appellant was doing well in high school, was passing all academic subjects, and had passed all parts of the state mandated tests. Appellant was rated as having average proficiency in English. The school records demonstrated that Appellant had tested lower in junior high, with a number of scores in the lower extreme or below average ranking.

The trial court held a hearing on Appellant's motion for new trial. At that hearing, Appellant offered an evaluation from Clinical Associates of East Texas regarding Appellant's disability determination. Mosley testified at the hearing and stated that Appellant graduated from TISD through the special education program. Appellant also received social security disability until she was eighteen. Mosley stated that she was at every meeting with Appellant and her trial counsel, and that all of these meetings occurred at the courthouse. Mosley further claimed that trial counsel never discussed any issues with her regarding Appellant's mental health ability, status, special education, or disability payments. According to Mosley, trial counsel never questioned her or Appellant regarding any of Appellant's limitations. On cross-examination, Mosley said that she told trial counsel that Appellant had a disability, but she did not tell her that Appellant was diagnosed with borderline mental retardation.

Appellant's trial counsel also testified at the hearing. She stated that she has been licensed to practice law in Texas for more than forty years, and she has represented many criminal defendants during her practice. She confirmed that her face-to-face meetings with Appellant were always at the courthouse, but she also spoke to Appellant by telephone. Trial counsel said that she had no indication that Appellant had a sanity or competency issue. She

6

believed that a recommendation for deferred adjudication community supervision was a good result for Appellant because she did not believe a "not guilty" verdict was possible based on the facts. Trial counsel said that Appellant's being on disability and taking special education classes should have been included in the PSI if Appellant answered the questions truthfully and completely. Counsel testified that she never had any reason to believe that Appellant did not understand the consequences of her plea of "guilty." She felt as though Appellant had sufficient time to discuss the case with her.

Trial counsel testified that Mosley or another family member was generally present during her conversations with Appellant. She testified that Mosley never told her that Appellant was not understanding the proceedings or that Appellant had mental health concerns. Trial counsel believed that Appellant had the capacity to disclose facts and events that could help her case. Appellant provided appropriate responses to all of her questions.

Trial counsel related that when she received notice of the application to revoke Appellant's community supervision, she contacted Appellant and was told that Appellant was in the hospital having a baby. She then filed a motion to continue the hearing. She testified that most of her contact after the State filed the application was with Appellant's mother. Trial counsel stated that she called Mosley several times, but never received a response from Mosley or Appellant. As a result, she was unable to meet with Appellant after the State filed the application to revoke until the day of the hearing.

The trial court noted its awareness of various aspects of Appellant's history. Specifically, the court noted that the PSI showed Appellant was in TISD's PACE high school program, and that Appellant said she had not been in special education classes. The trial court also was aware that Appellant had not been treated at an MHMR facility, was not taking any medications other than prenatal vitamins when she pleaded guilty, and had been to BHC. Finally, the trial court knew that Appellant had obtained a finding of disability, but also was gainfully employed at a hospital when she pleaded "guilty." The trial court denied Appellant's motion for new trial.

**Conclusion**

In response to a question in the PSI, Appellant stated that she did not attend special classes in school. Neither Appellant nor her mother claimed that Appellant had been enrolled in special education classes until after Appellant had been sentenced. Because Appellant failed to provide information about her special education classes that would have led trial counsel to

7

investigate further, her trial counsel's representation was not defective for her failure to subpoena Appellant's school records. *See In re Martinez*, 195 S.W.3d at 728-29. Similarly, Appellant repeatedly stated that she had been hospitalized in a mental institution, but that she had no physical, medical, or mental impairment. Mosley claimed that she told trial counsel that Appellant had a disability. But trial counsel testified that neither Appellant nor Mosley told her that Appellant had mental health concerns. Accordingly, trial counsel's representation was not defective for her failure to investigate Appellant's mental health records. *See id.*

Further, Appellant failed to show that she was prejudiced by trial counsel's lack of investigation. The records presented at the hearing on Appellant's motion for new trial showed that Appellant had been diagnosed with ADD or ADHD, had taken special education classes, and had received disability benefits. The trial court was aware that Appellant had been treated at BHC and that she had been receiving disability benefits. We have no reason to believe that the trial court would have sentenced Appellant to less than fifteen years for burglary of a habitation based on Appellant's having been diagnosed with ADD or ADHD, receiving disability benefits, or having taken special education classes. *See Bone v. State*, 77 S.W.3d at 836.

Because Appellant failed to carry her burden under *Strickland*, we overrule Appellant's sole issue.


## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the judgment of the trial court.


**BRIAN HOYLE**
Justice

Opinion delivered August 31, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 31, 2016**

**NO. 12-16-00005-CR**

**CHARDONE´ PRICE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 114-1289-13)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*