# NO. 12-22-00139-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CLINTON WAYNE HARVEY,* *APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Clinton Wayne Harvey appeals his conviction for continuous sexual abuse of a child. In four issues, Appellant contends that his trial counsel rendered ineffective assistance and that the trial court erred in admitting hearsay evidence. We affirm.

## BACKGROUND

On June 3, 2021, Appellant was charged by indictment for the offense of continuous sexual abuse of a child. Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

In his opening argument, defense counsel stated to the jury that Appellant was previously convicted of and imprisoned for the offense of sexual assault. Thereafter, the trial judge requested that trial counsel clarify this point of trial strategy on the record. At an *ex parte* hearing, Appellant testified he discussed trial strategy with his attorney and agreed that trial counsel should reveal his criminal history before the jury at the guilt/innocence phase of trial, because he was not trying to hide anything from the jury, and "the whole truth ha[d] to come out."[1]

The State called A.H., the complainant, as a witness. A.H. testified in detail that Appellant, her former stepfather, sexually assaulted her regularly for over two years. The

---

[1] Consistent with this trial strategy, Appellant opted to testify in his own defense at trial.

assaults began in 2015 when she was thirteen years old, and ended by the summer of 2019, when her mother's relationship with Appellant ended and Appellant no longer lived with A.H. Shortly after the assaults began, A.H. attempted to tell her mother about the abuse, but her mother accepted Appellant's explanation of the events and took no action. Additionally, Appellant regularly gave A.H. Xanax pills to manage her ensuing anxiety and "breakdowns," which generally caused A.H. to become confused and "pass out." While she was under the influence of Xanax, police questioned A.H. at school about statements she made to two friends, suggesting that Appellant sexually abused her. When asked how the Xanax affected her on that specific day, A.H. testified that she lacked any memory of most things that occurred that day. She also denied that Appellant assaulted her. A.H. did not tell anyone else about Appellant's actions because she was afraid of him, having seen him physically assault and abuse her mother.

A.H. also testified that in the year 2017, a friend, N.D., spent the night at A.H.'s residence after a trip to the fair. During the night, N.D. woke A.H. from sleep and appeared to be in a panicked state. When A.H. asked what happened, N.D. said that Appellant came into the room and tried to touch her. The trial court overruled defense counsel's hearsay objection on the grounds that N.D.'s statement was an excited utterance.

N.D. later testified that in September 2017, when she was fifteen years old, she slept over at A.H.'s house following a group visit to the fair. The same night, she awoke to find Appellant touching her genital area over her clothing. She pretended to be asleep but closed her legs twice to prevent Appellant from touching her. After he left the room, N.D. texted a friend about the incident, woke up Appellant's biological daughter and told her what happened, and then woke up A.H. and told her about the incident. N.D. recalled that she was "crying hysterically" during these conversations.

Detective Debra Daily, formerly a sergeant with the Whitehouse Police Department, testified that she spoke to A.H. on September 2, 2019, in response to her report of continuous sexual assault by Appellant. Daily stated that A.H. cried throughout the interview, sometimes "out loud." The State then moved to admit the video recorded by Daily's body camera depicting her investigative interview with A.H. Defense counsel objected to the video as hearsay, while the State argued that it should be admitted as an excited utterance. The trial judge reviewed the video and ruled that because A.H. appeared "fairly distraught" therein, "under 803, and one of its many, many exceptions, it would be appropriate to admit [the video]."

2

A.C., a former school friend of A.H., briefly testified about her experiences being around Appellant, and specifically an incident she witnessed at Appellant's home. A.C. stated that she, A.H., one of Appellant's biological daughters, and another friend were "hanging out" in one of the house's bedrooms, and were being "too loud," so Appellant entered the room to tell them to be quiet. He got "pretty angry," and ended up throwing a speaker toward them, which scared A.C. She further stated that Appellant regularly raised his voice and often used profanity in her presence.

The jury ultimately found Appellant "guilty," and assessed a sentence of life imprisonment. Appellant did not move for a new trial. This appeal followed.

INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant's first three issues allege that his trial counsel rendered ineffective assistance. He argues that his trial attorney was ineffective by failing to object to certain extraneous offenses or acts and failing to request limiting instructions at both phases of trial regarding extraneous offenses. Appellant further argues that the cumulative effect of trial counsel's errors amounts to ineffective assistance.

**Standard of Review and Applicable Law**

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test found in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Under the first prong of the *Strickland* test, an appellant must show that counsel's performance was "deficient." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). A deficient performance occurs when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To be successful, an appellant must show that counsel's representation fell below an objective standard of reasonableness. *Id.*, 466 U.S. at 688, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712.

Under the second prong, an appellant must affirmatively show that counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Mitchell v. State*, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999). The appellant must prove that his attorney's errors, judged by the totality of the representation and not by isolated instances of

3

error, denied him a fair trial. ***Burruss v. State***, 20 S.W.3d 179, 186 (Tex. App.—Texarkana 2000, pet. ref'd). It is not enough for the appellant to show that the errors had some conceivable effect on the outcome of the proceedings; he must show that there is a reasonable probability that, but for his attorney's errors, the verdict would have been more favorable, or the extent of his punishment would have been less. *See **id.***; *see also **Bone v. State***, 77 S.W.3d 828, 837 (Tex. Crim. App. 2002). The appellant must prove both prongs of the ***Strickland*** test by a preponderance of the evidence to prevail; failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. ***Tong***, 25 S.W.3d at 712; ***Thompson***, 9 S.W.3d at 813.

Review of trial counsel's representation is highly deferential. ***Tong***, 25 S.W.3d at 712. We begin with a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance and was motivated by sound trial strategy. ***Jackson v. State,*** 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The appellant bears the burden to overcome this presumption by presenting evidence showing *why* trial counsel did what he did. ***Id.***; ***Tong***, 25 S.W.3d at 712. An appellant cannot meet this burden if the record does not affirmatively demonstrate the alleged ineffectiveness. *See **Kemp v. State***, 892 S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (a record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim). Before being condemned as unprofessional and incompetent, defense counsel should be given an opportunity to explain his actions. *See **Bone***, 77 S.W.3d at 836. When the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation by the appellate court. ***Gamble v. State***, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.).

## Failure to Object to Evidence of Extraneous Offenses

Appellant argues that his trial counsel was ineffective because he failed to object to inadmissible evidence of four separate extraneous acts, as follows: 1) Appellant provided Xanax to A.H.; 2) Appellant was physically abusive to A.H.'s mother; 3) Appellant was violent toward children in his home, and specifically threw a stereo speaker at said children; and 4) Appellant assaulted A.H.'s mother. Appellant states that trial counsel should have objected based on Texas Rule of Evidence 403, because even if relevant, the probative value of the extraneous offense evidence was substantially outweighed by the likelihood of unfair prejudice.

4

An ineffective assistance claim alleging counsel was deficient in failing to object to the admission of evidence requires the appellant show, as part of the claim, the evidence in question was inadmissible. *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002), *cert. denied*, 538 U.S. 998, 123 S. Ct. 1901, 155 L. Ed. 2d 824 (2003); *Donald v. State*, 543 S.W.3d 466, 478 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Failure to object to admissible evidence does not constitute ineffective assistance of counsel. *McCallum v. State*, 311 S.W.3d 916 (Tex. App.—San Antonio 2010, no pet.). Although evidence of extraneous offenses or bad acts by a criminal defendant are not admissible to show that the defendant committed the charged offense in conformity with bad character, such evidence may be admissible if it has relevance for another purpose. TEX. R. EVID. ANN. 404(b)(2). Specifically, evidence of a defendant's extraneous acts is admissible to explain why a victim of sexual assault did not make a prompt outcry. *Gutierrez v. State*, 630 S.W.3d 270, 283 (Tex. App.—Eastland 2020, pet. ref'd) (citing *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011)); *see also Jimenez v. State*, No. 05-18-00848-CR, 2020 WL 5104964, at *5 (Tex. App.—Dallas Aug. 31, 2020, no pet.) (mem. op., not designated for publication). Evidence of previous bad acts committed by a defendant against the child victim of an alleged sexual offense is also admissible to show the child's state of mind. TEX. CODE CRIM. PROC. ANN. art. 38.37 (West 2021).

Upon a defendant's Rule 403 objection to extraneous-offense evidence, the trial court must conduct an analysis under Texas Rule of Evidence 403 to determine whether its probative value is substantially outweighed by the danger of unfair prejudice, which includes the following nonexclusive factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); *Martines v. State*, 371 S.W.3d 232, 247 (Tex. App.—Houston [1st Dist.] 2011, no pet.).[2]

Appellant contends that trial counsel's failure to object under Rule 403 cannot be ascribed to trial strategy. While the record does not contain trial counsel's specific reasoning for foregoing any objection to the extraneous-offense evidence, the record shows that counsel's

---

[2] Rule 403 favors the admission of relevant evidence, and it is presumed that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). This is particularly true in sexual assault cases; Rule 403 "should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant." *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009).

overall trial strategy was to present an appearance of candor and honesty to the jury (a strategy to which Appellant agreed). Texas courts have consistently recognized this approach as a valid trial strategy, and counsel's choice to employ this strategy does not amount to ineffective assistance of counsel. *See, e.g.*, **Martin v. State**, 265 S.W.3d 435, 443-45 (Tex. App.—Houston [1st Dist.] 2007, no pet.); **Waller v. State**, No. 06-13-00106-CR, 2014 WL 4657486, at *5 (Tex. App.—Texarkana Apr. 25, 2014, pet. ref'd) (mem. op., not designated for publication); **Matthews v. State**, 960 S.W.2d 750, 755 (Tex. App.—Tyler 1997, no pet.). Trial counsel's allegedly deficient actions comport with counsel's trial strategy as expressed in the record. Consequently, we cannot find that Appellant has overcome the presumption that his trial counsel's actions were motivated by sound trial strategy. **Jackson,** 877 S.W.2d at 771.

Moreover, Appellant does not argue that the State's extraneous-offense evidence was irrelevant, or that it was admitted to show that Appellant acted in conformity with bad character, rather than for another, permitted purpose. Rather, Appellant states that his trial counsel should have objected to the extraneous-offense evidence under Rule 403.[3] However, Appellant does not present any argument or analysis as to how the factors of the trial court's balancing analysis would have resulted in a finding that the evidence was substantially more prejudicial than probative (and therefore inadmissible).[4] Without showing that the evidence to which trial counsel did not object was inadmissible, Appellant cannot prove that his trial counsel performed deficiently in failing to object to same, and therefore cannot prove the first prong of the **Strickland** test. Consequently, we overrule Appellant's first issue.

### Failure to Request Limiting Instructions

Appellant argues that his trial counsel was ineffective because counsel did not request limiting instructions regarding evidence of the four previously discussed extraneous offenses when the trial court admitted the evidence. Generally, if a defendant does not request a limiting instruction at the time evidence is admitted, then the evidence is admitted for all purposes, and the trial judge has no obligation to limit the use of that evidence later in the jury charge. **Delgado v. State**, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007). However, defense counsel's failure to request a limiting instruction is not, by itself, deficient performance. **Agbogwe v. State**,

---

[3] Although Appellant states generally that trial counsel has a duty to object to harmful inadmissible evidence, he does not explicitly state that the extraneous-offense evidence was inadmissible.

[4] *See* TEX. R. APP. P. 38.1(i) ("[t]he brief must contain a clear and concise argument for the contentions made, with appropriate citations to the authorities....").

6

414 S.W.3d 820, 837 (Tex. App.—Houston [1st Dist.] 2013, no pet.). If a reviewing court can imagine a strategic motive to explain the ineffective assistance claim, then the reviewing court may not sustain the appellant's point of error. *Bone*, 77 S.W.3d at 833 n.13.

In this case, defense counsel did not request limiting instructions regarding the four specified extraneous offenses at the time each piece of evidence was admitted, and the record does not contain an explanation for this failure. It is possible counsel intended to avoid drawing further attention to the evidence or wished to avoid the appearance of Appellant having something to hide about his past actions, in line with the trial strategy of openness and candor. Because we can imagine a reasonable, strategic reason to explain counsel's allegedly unprofessional conduct, we cannot say the appellate record supports Appellant's claim of ineffective assistance. *See Kemp*, 892 S.W.2d at 115.

However, even if trial counsel's performance was deficient, Appellant has not shown a reasonable probability that without counsel's errors, the verdict would have been different, or his sentence would have been shorter. *Burruss*, 20 S.W.3d at 186. Although counsel did not request limiting instructions when each piece of extraneous offense evidence was admitted, before deliberations began, counsel did request that limiting instructions on extraneous offense evidence be included in the jury charge. And the jury charge for the guilt/innocence phase of trial contained instructions explaining the circumstances under which the jury could consider Appellant's extraneous acts, and the purposes for which they could consider such acts, in reaching a verdict. Specifically, the charge stated:

> You are instructed that if there is any evidence before you in this case alleging that Defendant committed an offense other than the offenses alleged against him in the Indictment in this case, you cannot consider said evidence, if any, for any purpose unless you find and believe beyond reasonable doubt that the Defendant committed such other offense, if any were committed.

> You are further instructed that if there is any evidence before you in this case regarding the Defendant's committing an alleged offense or offenses other than the offense alleged against him in the Indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond reasonable doubt that the Defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the Defendant, if any, in connection with the offense, if any, alleged against him in the Indictment and for no other purpose.

> The prosecution has the burden of proving the Defendant guilty of extraneous offenses, if any, and it must do so by proving each and every element of such offense beyond reasonable doubt, and if it fails to do so you must not consider such extraneous offense, if any. In the event you have reasonable doubt as to the Defendant's guilt of any extraneous offense after considering

7

all the evidence before you, and these instructions, you must not consider evidence of an extraneous offense for any purpose whatsoever in arriving at your verdict.

Appellant cites no authority to support his contention that the instructions in the jury charge were deficient and does not identify any different or additional instructions regarding "bad acts" his trial counsel should have requested.[5]

The jury charge at the punishment phase of trial also contained a limiting instruction on extraneous offenses, as follows:

> The prosecution has the burden of proving the Defendant guilty of extraneous offenses, if any, and it must do so by proving each and every element of such offense beyond reasonable doubt, and if it fails to do so you must not consider such extraneous offense, if any. In the event you have reasonable doubt as to the Defendant's guilt of any extraneous offense after considering all the evidence before you, and these instructions, you must not consider evidence of an extraneous offense for any purpose whatsoever in arriving at your verdict in assessing the Defendant's sentence.

But Appellant contends that the punishment charge should have contained "the same" limiting instruction as the guilt/innocence charge. In making said argument, he points to the portion of the instruction limiting the jury's consideration of extraneous offenses proven beyond a reasonable doubt to determining Appellant's motive, intent, or lack of mistake. However, such an instruction would be inaccurate because at the punishment phase of trial on a non-capital offense, extraneous offense evidence may be offered for *any* relevant purpose. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West 2021); *Delgado*, 235 S.W.3d at 252.

Although trial counsel did not contemporaneously request limiting instructions on the four specified extraneous offenses, the trial court still included appropriate limiting instructions in the jury charge at both phases of trial. And we presume the jury followed these instructions. *See Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (appellate court presumes jury obeyed limiting instructions). Appellant has not shown that either the verdict or his sentence would have been more favorable had counsel timely made such requests, and therefore cannot prove the second prong of the *Strickland* test. *See Burruss*, 20 S.W.3d at 186. Accordingly, we overrule Appellant's second issue.

---

[5] *See id.*

## Cumulative Effect of Errors

Appellant argues that the cumulative effect of counsel's errors constitutes ineffective assistance of counsel. The Texas Court of Criminal Appeals has extended the concept of "cumulative error" to ineffective assistance of counsel claims. *See **Chamberlain v. State***, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). However, there is no authority for the proposition that the cumulative effect of non-errors requires reversal. ***Id.*** Additionally, if an appellant's individual claims of error lack merit, then there is no possibility of cumulative error. ***Gamboa v. State***, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009).

Appellant does not attempt to explain *how* each of defense counsel's alleged deficiencies prejudiced the outcome of the case. Rather, he simply argues that the sum total of the errors resulted in an "improper" and "unjust" verdict and sentence. We have already addressed Appellant's complaints against his trial counsel and concluded that they are lacking in merit—counsel's actions were either not deficient, or those actions could not have prejudiced Appellant. Accordingly, we cannot conclude that this is one of those rare cases where the cumulative effect of ineffective assistance warrants reversal of the judgment on direct appeal. *See **id***. We overrule Appellant's third issue.

## ADMISSION OF HEARSAY EVIDENCE

In his fourth issue, Appellant argues that the trial court abused its discretion in admitting certain witness statements under the excited utterance exception to the hearsay rule.

## Standard of Review and Applicable Law

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. ***Moses v. State***, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); ***Manuel v. State***, 357 S.W.3d 66, 74 (Tex. App.—Tyler 2011, pet. ref'd). If the ruling is within the zone of reasonable disagreement, an appellate court will not disturb it. ***Manuel***, 357 S.W.3d at 74. It is well settled that the admission of hearsay evidence does not constitute reversible error if the same facts were proven by evidence introduced without objection. *See **Leday v. State***, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling"); *see also **Flores v. State***, 513 S.W.3d 146, 165 (Tex. App.—Houston

9

[14th Dist.] 2016, pet. ref'd) (improper admission of testimony was harmless because same or similar evidence was admitted without objection elsewhere).

Texas Rule of Evidence 803(2) defines the excited-utterance exception to the hearsay rule as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2); *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). The critical issue is not the specific type of emotion concerned, but whether the declarant was still dominated by the emotion caused by the startling event when she spoke. *Coble v. State*, 330 S.W.3d 253, 294 (Tex. Crim. App. 2010). The amount of time between the event and the utterance and whether the declarant made the utterance in response to questioning are factors to consider when determining whether the declarant was still under the influence of the event at the time of the statement, but they are not dispositive of the issue. *Apolinar v. State*, 155 S.W.3d 184, 187 (Tex. Crim. App. 2005); *Villanueva v. State*, 576 S.W.3d 400, 406 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). A finding that the statement in question was spontaneous is crucial when a court determines whether it is admissible as an excited utterance. *Tienda v. State*, 479 S.W.3d 863, 876 (Tex. App.—Eastland 2015, no pet.).

A violation of the evidentiary rules that results in the erroneous admission of evidence is non-constitutional error. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *see also Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Texas Rule of Appellate Procedure 44.2(b) provides that an appellate court must disregard a non-constitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). Under that rule, an appellate court may not reverse for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007); *Garcia v. State*, 126 S.W.3d 921, 927 & n.9 (Tex. Crim. App. 2004).

**Analysis**

Appellant contends generally that the trial court erred in admitting as excited utterances a "description of an assault" from A.H.'s testimony and A.H.'s recorded statement from the body camera of Daily, an outcry witness. As to both statements, Appellant provides only one sentence of argument as to why the trial court should not have admitted them: "Aside from a general

10

description that the speaker was anxious, scared and/or crying, the record does not support the conclusion that the proffered testimony should have been admitted."

Regarding N.D.'s statement to A.H., an occurrence of sexual assault qualifies as an "exciting event." *See, e.g., Farmer v. State*, No. 14-06-00159-CR, 2007 WL 2183110, at *3 (Tex. App.—Houston [14th Dist.] July 31, 2007, no pet.) (mem. op., not designated for publication). N.D.'s statement as reported by A.H. was directly related to the event, and N.D. made the statement to A.H. about Appellant assaulting her on the same night of the occurrence, such that it was reasonable for the trial court to find that the statement occurred close in time after the assault. *Ross v. State*, 154 S.W.3d 804, 811 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). A.H. reported that N.D.'s demeanor was panicked at the time of the conversation. *Wilkinson v. State*, 523 S.W.3d 818, 829 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd.). Finally, N.D. did not make the statement in response to any specific questioning—A.H. only asked, "what happened?" after N.D. woke her from sleep. *See Villanueva*, 576 S.W.3d at 406. Based on this evidence, we conclude that the trial court's determination that N.D. was still dominated by the emotion caused by the startling event when she made the statement is within the zone of reasonable disagreement, and the trial court did not abuse its discretion in admitting same. Furthermore, even if the trial court erred in admitting A.H.'s testimony about what N.D. said, the objected-to testimony is cumulative because substantially similar evidence was introduced at trial. Specifically, one of Appellant's biological daughters, L.H., testified without objection that N.D. awoke her that same night and told her Appellant entered the room and touched her. N.D. also testified in much greater detail about the events of that night, including Appellant sexually assaulting her and what she said to A.H., without objection from Appellant.

Whether the trial court erred in admitting Detective Daily's body camera footage of her interview with A.H. under the excited utterance exception is less clear-cut. While the startling event or condition that results in an excited utterance need not always be the crime in question, outside of Appellant's acts of sexual assault, there is no evidence of any other startling event or condition that triggered A.H.'s statements to Daily. *See Hughes v. State*, 128 S.W.3d 247, 252 (Tex. App.—Tyler 2003, pet. ref'd.). Exactly when Appellant's sexual abuse of A.H. ultimately ceased is unclear from the record; consequently, it is uncertain how much time passed between the conclusion of the sexual abuse (and thereby, the latest possible existence of the startling condition) and the date of Daily's interview. A.H. testified that she and her mother moved to a

11

separate residence in the "summer of 2019," before the school year started, after which she had no further contact with Appellant. Therefore, the trial court could have reasonably inferred that at least several days had elapsed.[6] A.H. was sixteen years old at the time of the interview and did not appear to blurt out her statements without forethought, but knowingly agreed to speak to law enforcement and answer questions about the reported abuse. A.H. spoke for approximately twenty minutes, related a detailed narrative of Appellant's actions, and provided answers to Daily's questions about the events.

A.H. was unquestionably tearful and upset while speaking to Daily, and it is natural that she would be distraught while relaying such a painful personal history. However, "[e]motions, even strong ones, do not necessarily demonstrate the lack of time or opportunity to contrive or misrepresent information." *Sandoval v. State*, 409 S.W.3d 259, 286 (Tex. App.—Austin 2013, no pet.); *Glover v. State*, 102 S.W.3d 754, 765 (Tex. App.—Texarkana 2002, pet. ref'd) (fact that declarant was upset does not render her statement an exited utterance). The circumstances under which A.H. told her story, as provided in the record, weigh against a finding that her statements were the product of impulse, rather than reflection. *See, e.g.*, *Gay v. State*, 981 S.W.2d 864 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (victim's statements regarding sexual assault were not excited utterance because victim had opportunity to reflect, where latest event of abuse occurred ten days prior); *see also Sandoval*, 409 S.W.3d at 286 (age of declarant, who was fifteen when she reported a sexual assault to her cousin, weighed against finding of spontaneity); *Glover*, 102 S.W.3d at 765 (narrative of past acts or events, as distinguished from a spontaneous statement, does not qualify as an excited utterance). At the time of her statement, A.H. had the time, opportunity, and capacity to reflect before disclosing the details of the sexual abuse to Daily, such that her statements were not spontaneous in nature. A.H.'s statements pertained to a deeply upsetting series of events, but those statements were not excited utterances as contemplated by Rule 803(2). Accordingly, we conclude that the trial court erred in admitting A.H.'s hearsay statements through the video footage.

---

[6] A.H.'s mother later testified that the move occurred sometime in July 2019, but this information was not yet before the trial court at the time it ruled on Appellant's hearsay objection to the video. We review the trial court's ruling on admissibility "in light of what was before the trial court at the time the ruling was made." *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

Nevertheless, this error is non-constitutional, and is not reversible unless it affected Appellant's substantial rights.[7] After examining the record of Appellant's trial as a whole and considering the video exhibit in the context of the entire case against Appellant, we have fair assurance that the error did not have a substantial and injurious effect or influence on the jury's verdict. *See Casey*, 215 S.W.3d at 885. A.H. testified at trial about the sexual assaults and her history with Appellant. Her trial testimony was inclusive of and consistent with the facts in the video exhibit. The State sufficiently proved the facts to which the hearsay relates by other, unobjected-to testimony; therefore, we conclude the admission of the video exhibit did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Lumsden v. State*, 564 S.W.3d 858, 891 (Tex. App.—Fort Worth 2018, pet. ref'd) (sexual assault victim's trial testimony, to which defendant did not object, covered the same facts as erroneously admitted video of her forensic interview, rendering error harmless); *Shaw v. State*, 122 S.W.3d 358, 364 (Tex. App.—Texarkana 2003, no pet.) (sexual assault victim's trial testimony, to which defendant did not object, included the same facts as erroneously admitted diary entry, rendering error harmless).

Because we conclude that the trial court's error in admitting the evidence of which Appellant complains did not affect Appellant's substantial rights, we overrule Appellant's fourth issue.

### DISPOSITION

Having overruled each of Appellant's four issues, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered May 10, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

---

[7] Appellant's brief does not contain any argument or analysis addressing *how* the erroneous admission of the video affected his substantial rights.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 10, 2023**

**NO. 12-22-00139-CR**

**CLINTON WAYNE HARVEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1015-21)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*